*In re* OPINION OF JUDGES.

No. A-423.   Opinion Filed October 10, 1911.

(118 Pac. 156.)

COURTS—Advisory Opinions—Scope. An opinion of the Criminal Court of Appeals, in response to the Governor's requirement, as authorized by Snyder's Comp. Laws 1909, sec. 6928, upon a statement showing a conviction requiring judgment of death, is an advisory opinion of the judges, where an appeal has not been taken from the judgment; the scope of the question being whether there has been an observation of all the formalities of law essential to the taking of human life, and whether the trial, conviction, and sentence of death have been in accordance with the law of the land.

(Syllabus by the Court.)

Opinion of the Judges, rendered on request of the Governor.

Frand Edwards, by information presented and filed on August 10, 1911, in the district court of Pontotoc county by Robert Wimbish, county attorney, was charged with the murder of one William B. Gray, committed in Pontotoc county, on August 3, 1911. On said day the defendant was arraigned. It appearing that he was without means to employ counsel, upon his request the court appointed R. C. Roland, Esq., to defend him. Whereupon he entered a plea of not guilty, and filed an application for a change of venue to Seminole county, which application was confessed by the county attorney, and was granted by the court. The state and the defendant in open court thereupon agreed that the case be set for trial at Wewoka, Seminole county, on August 14th, and it was so ordered. Under the orders of the court, the clerk transmitted to the clerk of the district court of Seminole county a transcript of the record and proceedings had, and the defendant was by the sheriff of Pontotoc county delivered to the sheriff of Seminole county.

August 11th the defendant filed his verified application for an order of the court to secure the attendance of Dr. Griffin of the state insane asylum at Norman, Dr. Hartman of Ada, and Dr. Watterfield of Holdenville, as medical experts on his behalf, and it was so ordered by the court. On the day set for trial

(August 14th), counsel for defendant stated to the court that on account of the physical condition of the defendant he could not go to trial on that day, and the case was continued until the next day. The next day counsel made another similar statement, and the court appointed four physicians to examine the defendant, and report to the court their opinion as to whether the defendant was in a condition to be tried at this time. They reported that the defendant was able to go to trial. The court then continued the case, subject to call. August 17th the case was called, and a jury impaneled to try the case. August 19th the jury returned into open court their verdict, finding the defendant guilty of murder as charged, and assessing his punishment at death. On September 5th a motion for new trial was overruled, and the court rendered judgment and sentence in accordance with the verdict.

The evidence on the part of the prosecution proved the following state of facts:

That about 8 o'clock a. m., August 3, 1911, the deceased and the defendant stopped at the home of Leslie Hewit, seven miles southeast of Roff for shelter from a rainstorm. The deceased was an old man, with long whiskers, and his hair was gray and long, coming down over his shoulders. They were driving a span of mules to a covered wagon, and leading a black horse behind the wagon. After stopping about 15 minutes, they drove east on the road leading to a bridge about three miles east on the Blue river. They passed the home of B. F. Ridgeway, a quarter of a mile west of this bridge, about 9 o'clock a. m. The wagon sheet was not pulled down as they went east. Shortly after they passed Ridgeway's a gunshot was heard in the direction of the bridge. Inside of an hour, the outfit returned, going west, with only the defendant visible. It was about noon when it passed Mr. Hewit's place, coming back, and the wagon sheet had been pulled down. On August 5th the body of the deceased, in a badly decomposed condition, was found in the brush on a branch a short distance west of Hart, Pontotoc county. There were gunshot wounds in the back of the head, where five buck-

shot had entered, some of which had passed through the head, coming out near the eyes. There were the tracks of a wagon turning from the road about 30 steps, and about 50 steps further was the corpse, wrapped in an oilcloth.

Long gray hairs were found sticking to the rocks and bushes from where the wagon stopped to where the corpse was found. About two miles further on, a tent, a bed, and some boxes were found in the brush, where the tracks of the same wagon had left the road. A blanket, smeared with blood and brains and long gray hair, was also found, and a musket was found hanging on a sapling, tied with a twine string.

The defendant camped near Hart on the night of August 3d, and purchased some groceries at a store there on the morning of August 4th. He also wanted to buy a spade. On that day he was seen traveling in the direction of Ada, and asked several persons the road to Pauls Valley. He also offered to sell the mules. The wagon tracks were traced and followed from where the body was found to Pauls Valley by several persons, who reached Pauls Valley about 6 p. m., August 5th, and there found the defendant. He had sold the mules and wagon for $175, and had purchased a saddle for the black horse. The mules, horse, and wagon were identified as the property of the deceased by his brother, Jonathan B. Gray. When arrested, the defendant said that his name was Smith, and he made a voluntary statement to the effect that he met the deceased at Owens' Ferry the Sunday before, and started traveling with him; that the first night they camped near Butcherknife, the second night near Graham, the third night near Davis, and the fourth night near Hickory. He then said a man rode up to the wagon, and told Mr. Gray to give up his money, and Mr. Gray told him that he was a wood hauler, and made his money hauling wood, and had no money; that he (the defendant) started to run away, and this man told him to come back and stay there; that the man then shot Mr. Gray, and told the defendant to take the old man and dispose of the body, and go and dispose of the wagon and team; that he would see him some time in the future and divide the money

with him; and that if he said anything about it "we would kill you"; that the man then went through a wire fence, and he asked to be taken to where the shooting occurred, near the bridge on Blue river, and he would show where the wire was cut, the posts pulled up, and the staples pulled out. Defendant was taken there to point out where the person went through the fence; but the wire was not cut, the posts not pulled up, or the staples pulled out of the fence on either side of the road.

The defendant testified on his own behalf that his name was Frank Edwards, his age 31 years; that he was a married man, having a wife and child in Comanche county; that his wife deserted him in 1910, and that year he was hit over the head with a stove lifter; that he had a team and sold it, and blew the money all in; that he had no certain place he called his home; that about the 1st of August he was stopping at his brother-in-law, Jim Owens', on Red river, helping a little in running the ferry; that he met the deceased on Owens' ferryboat on the last Sunday in July; that he started to travel with him, and they camped the first night near Butcherknife; that they came through the towns of Graham, Davis, and Sulphur Springs and Hickory. After leaving Hickory the morning of August 3d, they went east to where the bridge on Blue river, in Pontotoc county, is; that just before they reached the bridge a fellow that he knew, whose name was Fred McFarlin, came up in front of the team, and told the old man that he wanted what money he had; that the old man told him that he did not have any money; that he hauled wood for his money; that McFarlin told defendant to get out of the wagon; that he then told the old man that he was going to kill him; that he run around at the back end of the wagon, and the defendant started to run, and he told him if he ran he would shoot him; that he then shot the old man, and told the defendant he would kill him, and he said: "'You can't get away, and if you do the rest of the boys will get you, if I don't." He then got on his horse, and said that he did not kill the old man for his money; that he killed him because of some trouble they were into, or some of the family had been into; that he then told the

defendant to take the old man and dispose of the body, and sell the wagon and team, and the next time he saw him to divide the money with him; that he did exactly what McFarlin told him to do by unloading Mr. Gray's body in the brush near Hart, and the trunk and bedclothing somewhere near there, and that he tied the gun up in a tree; that when he reached Pauls Valley he sold the team and wagon, and was preparing to buy a saddle, to leave Pauls Valley, when he was arrested.

Two physicians called on the part of the defendant, in answer to a proper hypothetical question, and from their observation and examination of the defendant, would not say that, in their opinion, the defendant was insane. One stated that in his opinion the defendant was sane. In rebuttal, two physicians called on the part of the state stated that from their examination and observation, and in answer to the hypothetical question, in their opinion, the defendant was sane.

The judgment of the court recites:

"It is therefore ordered, adjudged, and decreed by the court that the said Frank Edwards be hanged by the neck until dead, in Seminole county, state of Oklahoma, upon Friday, the 20th day of October, A. D. 1911, and it is ordered that the sheriff of Seminole county, state of Oklahoma, execute this judgment of death on the day and date aforesaid, between the hours of 10 o'clock a. m. and 2 o'clock p. m., within the walls or yards of the county jail at Wewoka, Oklahoma, in the manner provided by law, and make due return hereof and fail not. The defendant is notified of his right of appeal to the Criminal Court of Appeals. Tom D. McKeown, Judge of the Seventh Judicial District Court in and for Seminole County, State of Oklahoma."

In accordance with the requirements of the statute, the clerk of the district court of Seminole county made a certified statement of the conviction and judgment and of the testimony given at the trial, and the presiding judge, Hon. Tom D. McKeown, transmitted the same to the Governor. On September 12th J. J. McAlester, acting Governor, transmitted said record to this court, requesting the opinion of the judges, as required by statute.

Opinion of the Court.

To this inquiry the following reply was returned by DOYLE, J.:

## OPINION OF THE JUDGES.

To His Excellency, the Governor of Oklahoma:

The Judges of the Criminal Court of Appeals, responding to the official communication of Hon. J. J. McAlester, as Governor of Oklahoma, to this court, which presents for the consideration of the judges of the court a certified copy of the record of the conviction of Frank Edwards, who was, on September 5, 1911, by the judgment of the district court of Seminole county, sentenced to death in accordance with the verdict of the jury as returned upon his trial, finding him guilty of murder and assessing the death penalty, which judgment and sentence is that such execution shall take place on Friday, the 20th day of October, A. D. 1911, with the request that we give an opinion thereon as prescribed by section 6928, Snyder's Stat., we hereby respectfully submit the following opinion of the judges:

From an examination of the records of this court, we find that no appeal has been taken in said cause. As we view the law, this provision of the statute contemplates an advisory opinion of the judges, where an appeal has not been taken from a judgment and sentence of death.

The proposition then presented would be, Has there been an observation of all the formalities of law essential to the taking of human life? Or has the trial, conviction, and sentence of death been in accordance with the law of the land? *Opinion of the Judges,* 3 Okla. Cr. 315, 105 Pac. 684.

Upon a full and careful consideration of the record and the testimony, we find that the information sufficiently and correctly charges the crime of murder, and that the allegations of the information were most abundantly and conclusively sustained by the evidence adduced on the trial. There can be no reasonable doubt of the fact, in the light of the evidence, of the defendant's guilt. The instructions in the case are commendably complete and correctly state the law of the case, including correct instructions upon the special defense of insanity. The defendant had the

benefit of counsel appointed on his request. Upon the whole record we find no error. The admissions of the defendant alone show him to be guilty of one of the most atrocious murders ever perpetrated, and when the horrible details are considered, we can but admire the fortitude and forbearance of the community where it occurred in permitting the law to vindicate itself in his punishment with its own extreme penalty.

We are of opinion that the defendant, Frank Edwards, had a fair and impartial trial, and that all the formalities of law essential to the infliction of the death penalty have been fully observed.

FURMAN, P. J., and ARMSTRONG, J., concur.