## ZACK NOEL v. STATE.

No. A-3523.   Opinion Filed March 22, 1920.

(188 Pac. 688.)

(Syllabus.)

1. **JUDGMENT AND SENTENCE—Death Penalty—Time for Ex-ecution.** Our statutes provide that the punishment of death must be inflicted by electrocution, that the penitentiary shall be the place of execution, and that, when judgment of death is rendered, the judge must sign a warrant duly attested, under the seal of the court, stating the conviction and judgment, and appointing a day on which the judgment is to be executed.

which must be not less than 60 nor more than 90 days from the time of the judgment (chapter 113, Sess. Laws 1913). In this case the day designated in the judgment and fixed in the warrant for the execution was only 56 days subsequent to the judgment. **Held,** that the death warrant was therefore void.

2.    **SAME—Compliance of Sentence with Statute.** The judgment and sentence in a capital conviction ought to show by its recitals that all the requirements of the statute have been complied with, and where the jury find the defendant guilty of murder and assess the death penalty, the judgment should contain such verdict, or recite the fact that defendant was convicted of murder by the verdict of a jury assessing the death penalty.

3.    **CRIMINAL LAW—Witnesses—Time to Prepare for Trial—Rights of Accused.** It is the constitutional right of every person charged with crime to have compulsory process for obtaining witnesses in his behalf, and this involves the time reasonably necessary to prepare for trial, and where in a capital case the record shows that only two days intervened between defendant's arraignment and his trial, and that his attorney had only been appointed by the court to defend him two days before the trial, held, that the defendant was not allowed the time reasonably necessary to prepare for trial, or to enable him to secure the attendance of his witnesses.

4.    **ATTORNEY AND CLIENT—Duty of Counsel to Appeal From Death Sentence.** The right of appeal is a constitutional right, and counsel appointed by the court to defend an indigent defendant fails to fulfill his duty as an attorney when he neglects to take an appeal from a judgment and sentence of death.

5.    **APPEAL AND ERROR—Perfecting Appeal—Duty of Court to Direct Appointed Counsel to Appeal Death Sentence and to Order Transcript.** It is the duty of courts in the administration of criminal law to see that the accused shall have the benefit of every right which the law secures to him upon his trial, and in a capital case, where the defendant by reason of his poverty is unable to employ counsel, and the court appoints counsel to defend him, and the trial results in a judgment and sentence of death, the court should direct such counsel to appeal the case, and to this end it is the duty of the court to order the court clerk to furnish a duly certified transcript of the record, and to order the court reporter to furnish a transcript of the testimony without expense to the defendant.

*Appeal from District Court, Cherokee County;*
*E. B. Arnold, Judge.*

Zack Noel was convicted of murder and sentenced to death, and he appeals. Reversed, and cause remanded, with directions.

DOYLE, P. J.    This appeal is from a judgment of conviction for murder and sentence of death. The judgment reads as follows:

"Be it remembered that on this the 13th day of February, 1919, being one of the days of the regular February, 1919, term of the district court within and for Cherokee county, Oklahoma, there being present and presiding the Honorable E. B. Arnold, district judge, and there being also present J. B. Weaver, court clerk, C. W. Saunders, sheriff, and H. M. Vance, county attorney, and public proclamation of the opening of said court having been made, and said court being regularly and duly in session, the following, among other proceedings, were had, to wit:

"The defendant above named, Zack Noel, being personally present in open court and attended by his counsel, and having been legally presented by information by the county attorney and arraigned, and having pleaded not guilty to the crime of murder, charged in said information, and having been then and there in said court duly and legally tried and convicted of said crime, and upon being asked by the court whether he had any legal cause to show why the judgment and sentence should not be pronounced against him, and giving no good reason in bar therefor, and none appearing to the court:

"It is therefore ordered, adjudged, and decreed by the court that the said Zack Noel be punished by death for said crime by him committed, said judgment to be executed within the walls of the state penitentiary at McAlester, in the state of Oklahoma, on the 10th day of April, 1919.

"It is further ordered that the sheriff of Cherokee county, Oklahoma, transport the said defendant, Zack Noel,

to the said penitentiary at McAlester, Oklahoma, and deliver the said Zack Noel to the warden of said penitentiary within ten days from this date, for execution in accordance with this judgment, and that said sheriff make due return of his proceedings hereunder as required by law.

"It is further ordered that the warden of said penitentiary do confine and detain the said defendant Zack Noel in said penitentiary until the 10th day of April, 1919, and on said date execute this judgment by inflicting death by electrocution in the manner provided by law upon the said defendant, Zack Noel, and make due return and report of his proceedings to this court, as required by law.

"Done in open court at Tahlequah, Oklahoma, Cherokee county, this the 13th day of February 1919.

"E. B. ARNOLD, *Judge of said Court.*"

This appeal was taken by filing in this court on April 9, 1919, a petition in error with a transcript of a part of the record attached thereto.

The court clerk of Cherokee county certifies that the foregoing is a full, true, and correct copy of the original judgment in the case of *State of Oklahoma v. Zack Noel.* A duly certified copy of the death warrant, which conforms to the judgment and sentence, is attached thereto. The plaintiff in error was sentenced under the provisions of chapater 113, Session Laws 1913, entitled:

"An act prescribing death by electrocution for offenses punishable by death, and relating to procedure in the execution of the death sentence."

Section 1 reads:

"The punishment of death must be inflicted by electrocution."

Section 2 reads:

"When judgment of death is rendered, the judge must sign and deliver to the sheriff of the county a warrant duly attested by the clerk, under the seal of the court, stating the conviction and judgment and appointing a day on which the judgment is to be executed, which must be not less than sixty nor more than ninety days from the time of the judgment and must direct the sheriff to deliver the defendant within ten days from the time of judgment to the warden of the state prison at McAlester, in this state, for execution."

It appears from the judgment in this case, that the court, in fixing the date of the defendant's execution, appointed a day within 60 days from the time of the judgment. It will be observed that the statute above quoted requires the court to appoint a day for the execution not less than 60 nor more than 90 days from the judgment, and the judgment in this case shows that the date of execution is fixed on the fifty-sixth day from the time of the judgment. Thus it appears that the trial court improperly sentenced the defendant to be executed within the minimum time prescribed by the statute. We have examined all the cases accessible bearing upon the question presented, but find none directly in point. In the case of *Lowenberg v. People,* 27 N. Y. 336, the prisoner was convicted of murder in the first degree and sentenced under the act of April 14, 1860 (Laws 1860, c. 410), to suffer death. The court fixed a day for the execution 13½ months from the date of the judgment. By section 4 of said act it was provided:

"When any person shall be convicted of any crime punishable with death, and sentenced to suffer such punishment, he shall at the same time, be sentenced to confinement at hard labor in the state prison until such punishment of death shall be inflicted."

Section 5 declared:

"No person so sentenced or imprisoned shall be executed in pursuance of such sentence within one year from the day on which such sentence of death shall be passed, nor until the whole record of the proceedings shall be certified by the clerk of the court in which the conviction was had, under the seal thereof, to the Governor of the state, nor until a warrant shall be issued by the Governor under the great seal of the state, directed to the sheriff of the county in which the said prison may be situated, commanding the said sentence of death to be carried into execution."

In the opinion written by Balcom, J., it is said:

"The Supreme Court could not lawfully affirm this judgment. Its duty was to reverse it. * * * My conclusion, is, as the only error the Court of Sessions committed was in giving a wrong judgment, in part, against the prisoner, no new trial can be legally granted, and that the judgment must be wholly reversed, and the prisoner discharged."

All the judges concurred that the judgment was erroneous in fixing the date of execution; but the Chief Justice and four of the justices were for affirmance upon this ground:

"So much of the sentence as fixed the day of execution was absolutely void. The day so fixed being more than a year subsequent to the sentence, the Governor, but for the stay of proceedings upon the entire judgment, might have directed the execution to take place on any day after the expiration of a year. The convict having procured a stay of proceedings until the day of execution had passed, the error had, by his own act, become wholly immaterial, and he could not require the Supreme Court to reverse a judgment otherwise unobjectionable, on account of a separable addition thereto, void in itself, and which the lapse of time had rendered wholly nugatory."

In *Christian v. Commonwealth*, 5 Metc. 530, the Supreme Judicial Court of Massachusetts laid down the following rules, namely:

"When a judgment in a criminal case is entire, and a writ of error is brought to reverse it, though it is erroneous in part only, it must be wholly reversed. The court, after reversing a judment in a criminal case, cannot enter such judgment as the court below ought to have entered, nor remit the case to the court below for a new judgment."

These rules were approved by Bronson, C. J., in *People v. Taylor*, 3 Denio, 91.

It will be observed that in the *Lowenberg Case* the time fixed for the execution was an extension of the time fixed by the statute. As a general rule an extension of time within which the execution may take place after the sentence of death is a mitigation, and not an increase of punishment. In this case the court fixed the date of execution within the minimum time prescribed by the statute.

We think it is well settled that a judgment of conviction and sentence must conform to the punishment prescribed and be enforced in comformity with the statute, and that jurisdiction to render the particular judgment and sentence imposed is as essential to its validity as jurisdiction of the person and the cause. *Ex parte McClure*, 6 Okla. Cr. 241, 118 Pac. 591.

The sentence is the final determination of the trial court in a criminal cause, and is the order of the court, made in the presence of the defendant and his counsel, pronouncing the judgment and ordering the same to be carried into execution in the manner prescribed by law. Here the record shows that the court had jurisdiction over the defendant and over the offense and its punishment, but in the

exercise of its power the court committed a manifest error in fixing the date of the defendant's execution within the minimum time prescribed by the statute, and for this reason the court did not have jurisdiction to sentence the defendant to suffer the punishment of death on the date fixed in the judgment, and in the death warrant issued thereon, and for this reason the order fixing the date of defendant's execution is void. It necessarily follows that the death warrant issued thereon was absolutely void. We may remark here that, while no objection appears to have been taken to the judgment and sentence, there is another defect manifest. The judgment and sentence in a capital conviction ought to show by its recitals that all the requirements of the statute have been complied with. The Penal Code (section 2319, Rev. Laws) requires the jury to fix the punishment for murder, and authorizes the penalty of death at the discretion of the jury; and, if they find the defendant guilty of murder, they must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor; this, in order that the defendant may not be sentenced to suffer death, except in the discretion of the jury, and when a plea of not guilty is entered to an indictment or information charging murder, the extreme penalty can be adjudged only upon a verdict of the jury fixing the punishment of death, "but upon a plea of guilty the court shall determine the same." *Hopkins v. State,* 9 Okla. Cr. 104, 130 Pac. 1101, Ann. Cas. 1915B, 736. The judgment in this case does not recite the fact that the defendant was convicted of murder by the verdict of a jury assessing the death penalty.

This is sufficient to dispose of the appeal, and, as the day fixed for the execution of the sentence of death has

passed, owing to the pendency of this appeal, the proper practice would be to remand the case to .the trial court in order that the proper judgment and sentence might be pronounced and entered, if the erroneous judgment were the only error to be found in the record.     However, on the record before us, we are convinced that the .defendant should be awarded a new trial.     An inspection of the record discloses that the defendant was arraigned on the 3d day of February; at that time, it having been made to appear that the defendant was destitute of means to employ counsel, the court appointed counsel to defend him; that on the sixth day of February, 1919, the defendant entered his plea of not guilty and a jury was impaneled and sworn to try the case; that on the same day the jury returned their verdict of guilty of murder and assessing the punishment of death.     In the motion for a new trial the first ground is:

"Irregularity in the proceedings of the court in forcing the defendant into trial without first giving him an opportunity to have his witnesses appear in his defense after subpoenas had been duly issued and before a return was had thereon, all of said witnesses being within 50 miles of the court and in the state of Oklahoma, whereby this defendant was prevented from having a fair and impartial trial."

Every person charged with crime is entitled to a fair trial according to the due and orderly course of the law. The right of every person charged with crime to have compulsory process for obtaining witnesses in his own behalf is guaranteed by the Constitution (section 20, Bill of Rights) ; and this involves, as a matter of. course, the time reasonably necessary to prepare for trial and to find and

produce testimony in his defense. It is not, however, a matter of which the defendant can complain that the trial is speedy, if he has had time for preparation and is ready for his defense. Continuances ought always to be granted, when from the showing made, justice requires it; this to enable the defendant to procure all legal and competent evidence necessary for the fair presentation of his defense, if he has used due diligence to obtain the same.

In the case of *Westbrook v. State,* 14 Okla. Cr. 423, 172 Pac. 464, it is said:

"It is the right of every person accused of crime to have a fair trial and compulsory process to compel the attendance of his witnesses, and this involves as a matter of course, the time reasonably necessary to prepare for trial. The statute prescribes that civil cases in the district court shall not stand for trial until 10 days after the issues are made up, and no felony case should be set over the objection of the defendant within 10 days after his plea is entered."

From the instructions of the court it appears that circumstantial evidence alone was relied upon for a conviction. It may be inferred from the record that the testimony of the defendant as a witness in his own behalf was the only evidence supporting the defense made. The record shows that only two days intervened between the defndant's arraignment and his trial, and that his attorney had only been appointed by the court to defend him two days before the trial. On the record before us there can be no doubt that the defendant was not allowed the time reasonably necessary to prepare for trial or to enable him to secure the attendance of his witnesses.

The other grounds in the motion for new trial, and which are assigned as error in the petition, are in effect that the verdict of the jury is contrary to both the law and the evidence; that the court erred in admitting incompetent evidence over the objection of the defendant; newly discovered evidence material for the defendant, which could not with reasonable diligence have been discovered and produced at the trial. There is no bill of exceptions nor transcript of the testimony attached to the record; consequently the other errors assigned cannot be considered.

In granting a new trial in this case we cannot forbear mentioning the fact that this appeal was not taken by counsel appointed by the court to defend the defendant in the trial of the case, and as the result of his failure to appeal this case this appeal was not taken until the last day that an appeal could stay the execution of the sentence of death. The transcript of the record was received on that day through the mail, and there not being sufficient time to notify, in the formal way, the warden that a stay of execution had been granted, the writer of this opinion called and notified the warden by telephone that for the reasons here stated the death warrant was absolutely void, and that an order had been entered and issued by this court staying the execution of the sentence. We will take this occasion to say that no state has a better system of procedure safeguarding every right of a person charged with a criminal offense than has our state. It is the constitutional right of a person put upon trial for a criminal offense to be represented by counsel. Our statute provides that in all criminal cases the defendant must be informed by the court that it is his right to have counsel before being arraigned, and he must be asked if he desires the aid of counsel. If he desires, and is unable to employ counsel, the court must appoint counsel to

defend him. It is further provided that the court shall in such cases allow and direct to be paid by the county in which said trial is had a reasonable and just compensation to the attorney or attorneys so assigned for such services as they may render.

The right of appeal is a constitutional right, and counsel appointed by the court to defend an indigent defendant fails to fulfill his duty as an attorney when he neglects or refuses to take an appeal in the case from a judgment and sentence of death. Counsel appointed by the court notified this court, before this appeal was taken, that the case had been appealed to this court through the Governor. We presume that counsel had in mind the provisions of our Code which provide as follows:

"The judge of a court at which a conviction requiring a judgment of death is had must, immediately after the conviction, transmit to the Governor, by mail or otherwise, a statement of the conviction and judgment, and of the testimony given at the trial." Section 5968, Rev. Laws 1910.

"The Governor may thereupon require the opinion of the judges of the Criminal Court of Appeals, or any of them, upon the statement so furnished." Section 5969, Rev. Laws 1910.

It is well settled that the latter provision contemplates that an advisory opinion of the judges may be given to the Governor, when an appeal has not been taken from a judgment and sentence of death. The proposition then presented would be: Has there been an observation of all the formalities of law essential to the taking of human life? and has the trial, conviction and sentence of death been in accordance with the law of the land? *Opinion of the Judges*, 6 Okla. Cr. 210, 118 Pac. 156. There was no rec-

ord or transcript of the testimony in the case transmitted by the Governor to this court; it thus appears that the defendant was denied even the benefit of this safeguard. However, the duty was upon the defendant's counsel to take an appeal according to law.

It is the duty of trial courts in the administration of criminal law to see that the accused, however guilty he may be, shall have a trial in accordance with the rules of law, and this duty is emphasized in a capital case, and in such cases where the defendant, by reason of his poverty, is unable to employ counsel, and the court appoints counsel to defend him, and the trial results in a judgment and sentence of death, and the defendant desires to appeal, the trial court should direct such counsel to perfect an appeal, and to this end it is the duty of the trial court to order the court clerk to furnish a duly certified transcript of the record, and to order the court reporter to furnish a transcript of the testimony without expense to the defendant.

Section 6 of our Bill of Rights reads:

"The courts of justice of the state shall be open to every person and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

In *Jeffries v. State,* 9 Okla. Cr. 573, 132 Pac. 823, it is said:

"It is a violation of both the letter and spirit of this provision of the Constitution to require any man to pay any cost of court if he is a pauper and without the means of doing so, and to deny him the issuance of such process or the services of an officer when he is unable to pay for the same. In other words, justice in Oklahoma is the right of the poor as well as the luxury of the rich."

In the case of *Hutchins v. State,* 13 Okla. Cr. 717, 167 Pac. 338, it is held that:

"Where the defendant has been convicted and desires to appeal, upon a proper showing made to the trial court that he is unable to pay the court reporter for a transcript of the testimony, or the court clerk for a transcript of the record, it is the duty of the trial court to make an order directing that this be done without expense to the defendant."

And further held:

"On appeal by transcript from a conviction for murder, it appearing from the record that the plaintiff in error was denied his constitutional and statutory right to perfect an appeal by case-made as a poor person, by reason of the refusal of the court to order the court reporter to furnish him with a transcript of the proceedings, and of the testimony taken upon the trial, the judgment is reversed, and a new trial awarded."

In the opinion it is said:

"Under the Constitution and laws of this state an appeal may be taken by the defendant as a matter of right from a judgment of conviction in a criminal prosecution against him, and he is entitled to have this court review the proceedings had upon his trial and conviction when such appeal is taken according to law. Every citizen should feel and know that under our Constitution and laws there is no one so rich and powerful as to be above the just penalties of the law, and none so poor and humble as to be beneath its complete protection."

The most solemn and momentous duty courts are called upon to perform in the administration of the criminal law is to inflict the death penalty, and it should be inflicted only in extreme cases, when no other punishment will vindi-

cate the law and protect society against the totally depraved. How careful, then, should we be in reviewing a capital con-viction, before we lend our sanction to the taking away of that which, when taken away, we cannot restore. In such cases we must be satisfied that the defendant has been awarded a fair and impartial trial in accordance with the rules of law.

For the errors we have pointed out, the judgment herein is reversed, and the cause remanded with directions that additional and other counsel be appointed for the defendant, and for further proceedings in accordance with the views herein expressed.

The warden of the penitentiary will surrender the defendant to the sheriff of Cherokee county, who will hold him in custody until he shall be discharged, or his custody changed by due course of law.

ARMSTRONG and MATSON, JJ., concur.