## HAROLD GARRISON v. STATE.

No. A-8831. July 5, 1935.
(47 Pac. [2d] 224.)

D. P. Hervey, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J.   Harold Garrison was convicted in the district court for Payne county of rape upon the person of Alma Haskins, a girl under the age of 16 years and not the wife of the defendant, and in accordance with the verdict of the jury he was sentenced to serve a term of 2½ years in the penitentiary.   From the judgment he appeals.

The charge is, and the evidence shows, that the offense was committed June 5, 1933; the prosecuting witness attained the age of 14 years May 13, 1933; she gave birth to a fully developed child on March 3, 1934.

That some one had sexual intercourse with the complaining witness is indisputable; that such intercourse occurred at a time when she was under the age of consent is

undisputed; whether it was committed on the occasion testified to by the prosecuting witness and was committed by the defendant is the only question of controversy.

Many errors are assigned, most of which relate to the rulings of the court upon the admission of evidence. The rulings of the trial court upon the admission of evidence were extremely fair to the defendant, and we find few assignments meriting consideration.

The refusal of the court to grant a continuance on the ground that the defendant's counsel appointed by the court had been unable for want of time to prepare for the trial is assigned as error.

The case of Noel v. State, 17 Okla. Cr. 308, 188 P. 688, cited in support of the assignment, was a capital case, and only two days intervened between the defendant's arraignment and his trial. The record here shows the defendant was arraigned ten days before the trial, at which time he was represented by counsel chosen by himself.

When an application for a continuance has been denied, this court will look to the entire record with a view of determining whether or not an abuse of discretion is shown.

In Hall v. State, 11 Okla. Cr. 57, 142 P. 1044, 1045, it is said:

"When an application for continuance has been overruled by a trial court, this court will look to the entire record with a view of determining whether or not an injustice has been done, and when it clearly appears from the testimony introduced at the trial, and especially the testimony of the accused himself, that he has no defense, and that the conviction was just and proper, a judgment will not be reversed, in the absence of fundamental error."

On the record before us, no abuse of discretion appears.

Alma Haskins testified that she had lived nearly all her life in Stillwater; that with Jessie Lakey she went to the fair grounds; there met Harold Garrison and his brother, Dallas. Harold sent his brother home for cards to play strip poker; he returned with the cards and they all played strip poker; that she lost her hairpins, her belt, and footwear, then quit, and, going up on a little bridge near by, she saw officers coming, and went back where they were still playing to tell them; that Jessie was stripped and did not have on anything; that Jessie slipped on what she could, and they ran across a plowed field. It was then after 1 o'clock in the afternoon. Not long after the boys met them on the road and they went up by the fair grounds and again played strip poker; that she lost her clothes as far down as her underwear; that, when Jessie and Dallas left, she found her dress behind a bush where Dallas put it; that Harold then had intercourse with her. They then went back, and met Jessie and his brother near one of the barns and they went on home; that Harold Garrison is the father of her baby born March 3d.

As a part of her cross-examination she testified that she had sexual intercourse about a year before; that she did not have any act of sexual intercourse in April and May of 1933; that she never had sexual intercourse with Bud Lakey at any time; that she did not complain until she was in the hospital because Harold Garrison had threatened her and she was afraid to; that some time in July she was out with a party of six or seven boys and girls one night, and she had intercourse with one of the boys; that before noon that day, June 5, with Jessie she registered at the high school.

Valla Lee Cawley testified that she lived at the Rex

Hotel and the defendant and his wife were living there; that in a conversation with Harold Garrison the day the baby was born she asked him if he was responsible for this or if he was at the place they had the strip poker game, and he said "yes he was present and he said she was menstruating that day."

Dr. Paul Friedeman testified that he is a physician and surgeon; that on the 3d day of March he brought Alma Haskins to the hospital, and, with Dr. Whittenberg assisting, delivered her child; that it was a forceps delivery; that it was a nine months' baby boy and weighed eight pounds.

Harold Garrison, as witness on his own behalf, testified: That with his brother he went to the Fair Grounds that day and these girls came along. The Lakey girl had a bathing suit. He asked them where they were going. They said, "Swimming down on Stillwater creek." Some one suggested that they have a game of strip poker, and he sent his brother back to the house after a deck of cards. Then they went east of the Fair Grounds down by the creek and played strip poker. That, after playing a few minutes, Alma Haskins got up and started toward the Fair Grounds, the cops came along in a car and she came back. Then the girls went west across a cotton field. Then he came back and up the road, saw Alma talking across the fence to Orin Pringle, and he left Jessie and Alma talking to Pringle and with his brother went on to town. He denied any act of sexual intercourse.

On cross-examination he stated that "Jessie lost part of her clothes but did not pull them off."

Jessie Lakey testified:

"We went down there to go swimming and met the

boys; then we went down to the creek, were not there over 15 minutes. We came back to the cow barn and Alma was talking to some guy chopping cotton." That she waited till she got through talking. "The boys were sitting down by the side of the barn and they said they were going home, and we all went home." That Harold and Dallas lived next door to her but she did not have a date to meet them there that day. That she did not know what she did lose in the strip poker game except her shoes, and all Alma lost was her shoes. That she did not remember the time, but thought it was late in June. That about the 1st of May or last of April she went with Alma to a dance and the car broke down about four miles this side of Glenco. That there were seven or eight in the party, and the boys could not fix the car, and with Lenora Bales she went and hid from the boys, and that Alma slept with the boys that night. That witness took her dress off during the game, but had on a bathing suit under it. That all Alma took off was her shoes and hat and maybe her stockings.

A part of her cross-examination is as follows:

"Q. Do you remember the day that Harold Garrison was arrested, I had you brought to my office and I asked you some questions? A. Yes, but I forgot what they was. I didn't pay no attention to them. Q. You have forgotten the answers to them? A. Well, I just told you anything but didn't swear to it. Q. You remember my stenographer took them down? A. Yes, someone did. Q. Didn't you make answers when I asked you some questions as follows: 'Q. Who were playing, the last time you played poker? and you made the answer A. Just us two couples. Q. You and Dallas and Harold and Alma? A. Yes, sir. Q. How many clothes did you girls have to take off? A. I just lost my shoes and stockings. Harold would make her bet him, she didn't know what she was doing. 'Q. You were not drinking? A. The two boys were almost drunk. Yes, they

were drinking. 'Q. How many clothes did Alma lose during this second session? A. All but her pants. She lost her dress and Dallas took it and laid it on a limb. 'Q. Following that, you and Dallas left? A. Yes, sir.' Q. Do you remember making that answer? A. No, sir. Q. 'You left her and Harold alone.' Do you remember that answer? A. No, sir. Q. 'When was that? A. About sundown.' Do you remember that? A. No, sir. Q. Do you remember me asking you these questions and do you remember them being written down? A. Yes, but I didn't swear to it, did I?"

James Lakey, commonly known as Bud Lakey, testified:

"Q. How old are you? A. I am 18 now. Q. Did you ever have sexual intercourse with Alma Haskins? A. Yes, sir. Q. When? A. About a year ago last April. Q. Could it have been in May? A. I don't think so. Q. About how long before? A. A week or ten days."

On cross-examination he stated that he was under 18 years of age when it happened; that he is a brother of the witness Jessie Lakey; that the intercourse occurred down at the fair grounds.

Frank Garrison testified that he was Harold's father and visited Alma at the hospital a few days after the baby was born and was present when Mr. Horton asked her whose baby it was, and she said Harold Garrison was the father of her child.

It follows from the foregoing review that the objection to the sufficiency of the evidence to support a conviction is untenable. Its credibility was for the jury.

It is also contended that the court erred in giving instruction No. 5 as follows:

"You are further instructed that certain evidence has been permitted to go to you tending to show that the prose-

cuting witness, Alma Haskins at or about the date set forth in the information, that is, June 5th, 1933, had accomplished an act or acts of sexual intercourse with others than the defendant. And in this connection, you are instructed that such evidence has been permitted to go to you only for the purpose of tending to explain the theory of the prosecution that the defendant is the father of the child proven to have been born to the prosecuting witness on March 3rd, 1934, upon some other hypothesis than that he is the father of such child, and shall be considered by you for no other purpose.

"It is no defense under the law that said prosecuting witness, if under sixteen years of age, had accomplished acts of intercourse with others than the defendant. It is sufficient if you find and believe from all the evidence, facts and circumstances in proof in the case beyond a reasonable doubt that the defendant had such act of intercourse with her on or about the time alleged in the information; and if you so find, it is your duty to return a verdict of guilty in this case, even though you fail to find that he is the father of said child.

"Given by the court and excepted to by defendant.

"Freeman E. Miller, Judge."

This instruction is consonant with the holding of this court in Chandler v. State, 31 Okla. Cr. 26, 236 Pac. 917, and is a correct limitation of the purpose of the introduction of the evidence covered by the instruction. It therefore presents no error.

Certain misconduct on the part of the county attorney in making prejudicial remarks in his closing argument to the jury is also complained of. The only showing of any such remarks is by affidavit in support of the motion for a new trial; and for that reason cannot be reviewed.

By numerous decisions of this court the rule is well settled that exceptions must be saved to alleged improper

remarks of the prosecuting attorney in his argument to the jury, and such remarks can only be shown by being properly incorporated in the case-made, or by bill of exceptions duly allowed, and, when not so preserved in the record, cannot be shown by affidavit or mere recitals in a motion for new trial. Therefore the assignment cannot be considered. Quitman v. State, 35 Okla. Cr. 245, 250 Pac. 441.

The motion for a new trial was properly denied.

While there is some conflict in the testimony, it strongly tends to show the defendant's guilt, and we find little in the case to make us look in favor upon the mere technical objections raised by the defendant. The trial was eminently a fair one.

The judgment appealed from is therefore affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.