## GEORGE H. HUNTER v. STATE.

No. A-3964. Opinion Filed Nov. 25, 1922.

Rehearing Denied March 12, 1923.

(212 Pac. 1014.)

(Syllabus.)

1. **Continuance—Discretion of Court—Continuance to Procure Testimony.** Where an application for a continuance is predicated upon the inability to procure certain testimony, and where the showing made indicates that it is exceedingly improbable that such testimony could be procured later, it is within the sound discretion of the court to deny the application.

2. **Same—Denial Where Lack of Diligence.** Held, under the circumstances here, no sufficient diligence or effort was made to procure the desired evidence.

3. **Same—Denial of Continuance to Obtain Merely Cumulative Evidence.** As a general rule, a continuance should not be granted to obtain evidence which is merely cumulative.

4. **Same—Continuance Properly Denied for Defendant's Attorneys to Prepare for Trial.** Under the showing made and from the facts appearing in the record, held, that the court committed no error in refusing a continuance on the ground that defendant's attorneys were unable to prepare for trial.

5. **Evidence—Sufficient Corroboration of Admitted Accomplice.** Evidence corroborating that of an admitted accomplice held sufficient.

6. **Trial—Evidence of Other Thefts Properly Restricted by Instructions.** The effect of evidence of other thefts tending to show a general conspiracy to steal cattle was properly restricted by the court's instructions as outlined in the opinion.

Appeal from District Court, Ellis County; T. P. Clay, Judge.

George H. Hunter was convicted of larceny of domestic animals, and he appeals. Affirmed.

C. B. Leedy and W. A. Briggs, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. This is an appeal from a judgment of the district court of Ellis county, Okla., finding the plaintiff in error guilty of larceny of domestic animals and fixing his punishment at confinement in the state penitentiary for a term of five years.

The record discloses that the plaintiff in error established a cattle ranch in Ellis county about the year 1917, where he has lived since that time; that on or about the 13th day of November, 1919, George Howlett, a neighboring ranchman, lost from his herd a certain mottled face, red cow or calf, which he was never able to locate or find; that some time in the summer of 1920 L. B. Akins, who had been in the employ of the plaintiff in error during the fall and winter of 1919, was arrested for the larceny of certain personal property and confessed to the sheriff and an inspector of the Texas Cattle Raisers' Association by the name of Gatewood that he (Akins), pursuant to a previous agreement with Hunter, stole the Howlett heifer, and that he and Hunter and Sheldon butchered the animal in Hunter's harness house at his ranch on or about the 13th of November, 1919, and that the meat thereof was consumed by Hunter and his hired hands at Hunter's home. It was shown that when the calf was butchered Sheldon, a young man in the employ of Hunter, dug a hole about four feet deep near a shed in the cow lot, and that he and Hunter buried the hide and head of the animal in this hole. This accomplice, Akins, also testified that pursuant to this agreement with defendant they had stolen other cattle prior to this time.

After having obtained this confession from Akins, the sheriff, Gatewood, and others went to Hunter's ranch and undertook to locate the place where these parts of the stolen animal were buried. They failed to find them and sent back to the county jail and had Akins brought out to the ranch,

where he pointed out to them the place where the parts of the animal were buried. Upon digging down 4 or 4 1-2 feet, the hide and head of the heifer were found and were identified by Howlett as being the hide and head of the animal lost by him.

At the trial of the case L. B. Akins testified that he stole the animal and put it into defendant's corral, and that before daylight it was butchered by himself, Sheldon, and Hunter. Sheldon testified that he assisted in butchering the animal in question and told of the disposition of the carcass. He testified further that he did not know that the animal was stolen until he saw the Howlett brand, and that he had nothing to do with the theft, only helping to butcher the animal and bury the hide and head. Mrs. Velva Akins, who was at the time she testified the wife of L. B. Akins, but whose name was Heidbrier at the time of the alleged stealing, testified that she was cooking for Hunter at the ranch at the time of the alleged stealing, and that the alleged stealing took place within a few days after the celebration of Armistice Day; that they had had no beef for supper the night before, but did have fresh beef for breakfast; and that some time during the day —she thought probably at noon—she went into what they called the bunkhouse, and there found four quarters of an animal that had been recently killed.

The state introduced 15 witnesses in chief and the defendant 25; the state introduced 9 witnesses in rebuttal; and the record of the trial comprises 566 typewritten pages.

The plaintiff in error in his petition in error brings 24 assignments, which he condenses into 4 propositions in his brief before this court.

Proposition 1 discussed by counsel for plaintiff in error in his brief applied wholly to the court's action in overruling

a motion for continuance, which motion was based upon the affidavit of the plaintiff in error, setting forth the fact that certain witnesses were absent, and also setting out in detail the testimony expected to be obtained from these witnesses. The motion for a continuance, briefly stated, was to the effect that one Frank Drew of Portland, Or., was at Woodward, Okla., in the month of April, 1920; that he met L. B. Akins there and inquired for work, and was referred to the plaintiff in error, Hunter; that Akins proposed that if he obtained employment there they could make beer on the side; Drew said that he did not want to do this because of the danger of being prosecuted, when Akins assured him that they would be safe; that he (Akins) and a pal had butchered a heifer when Hunter was away from home and had hidden the hide and head on his premises; that if they should get into trouble Akins would inform Hunter of the hidden head and hide, and their presence would cause suspicion to rest on Hunter; and that by this means they could cause Hunter to aid and protect them, and, if necessary, give them money to leave the country; that Drew refused to enter into this proposed arrangement and left the state of Oklahoma.

The application for a continuance states further that the defendant desired the testimony of "the proprietors of the Moody Hotel and the proprietors of the rooming houses at Canadian, Tex., for the purpose of establishing that Velva Akins," wife of L. B. Akins, was in Canadian, Tex., from November 15 to November 19, 1919, and therefore could not have been on the Hunter ranch during that time.

The application also set out that Ed A. Hitchcock and R. W. Hitchcock, both old acquaintances of plaintiff in error, living at Wellington, Kan., would testify if present that they visited the Hunter ranch on the 20th day of November, 1919, and that they saw a carcass of a freshly butchered animal

hanging on the windmill derrick, and that there was no fresh beef hanging in the bunkhouse, as was testified by some of the witnesses for the state. No attempt was made prior to this time to procure any of these witnesses. To procure depositions in a criminal case, the provisions of section 6040, R. L. 1910, apply:

"If the court or the judge to whom the application is made, is satisfied of the truth of the facts stated and that the examination of the witness is necessary to the attainment of justice, an order must be made that a commission be issued to take his testimony, and the court or judge may insert in the order a direction that the trial be stayed for a specified time reasonably sufficient for the execution of the commission and return thereof, or the case may be continued."

The defendant had no right to assume that the court, on the showing made, would be satisfied of the truth of the facts stated and that the taking of depositions was essential to mete out justice. Under such circumstances, the right to take depositions and the right to a continuance rest in the sound discretion of the court. Either of these rights may be waived by a failure to assert them seasonably.

The expected testimony of the absent witnesses, as set out in the affidavit, shows clearly that it would be merely cumulative evidence and could be used only for the purpose of impeaching the testimony of certain witnesses whom the plaintiff in error expected the state to introduce in its behalf on trial of the case. The application indicates that the witness Frank Drew, the one whose testimony would appear to be most important, was a "floater" with no definite fixed residence—his residence being given as General Delivery, Portland, Or.,—and upon the showing made it appeared doubtful if the testimony of this witness could ever be procured. The affidavit also fails to disclose what diligence, if any, was

used by plaintiff in error to procure the attendance of the absent witnesses. The only excuse offered for the absence of the witnesses referred to being that plaintiff in error's counsel had been busy in court and that he was led to believe that this case would not be tried at that term of court.

The record discloses that plaintiff in error was charged with this crime by information filed in the justice court on August 16, 1920. Within a few days thereafter, a hearing was had, upon which he was bound over to the district court. From the testimony produced at that hearing plaintiff in error anticipated the testimony of the state's witnesses that would be produced upon the final trial of the case, and upon that anticipation he seems to have worded his affidavit in support of his motion for continuance. Can it be said that when a defendant has had from August 16th to October 11th to obtain the necessary testimony in support of his defense, and has in the meantime made no effort to do so, he has exercised due diligence? This court has held in the cases of Bethel v. State, 8 Okla. Cr. 61, 126 Pac. 698, Howland v. Territory, 13 Okla. 575, 76 Pac. 143, and numerous other cases, that—

"A motion for continuance which does not show due diligence upon the part of the person interposing it to have the absent witnesses present should be overruled."

And in Davis v. State, 10 Okla. Cr. 169, 135 Pac. 438:

"A defendant should not" sit still and "wait until just before his trial before he begins to get ready for trial, but must exercise" due "diligence in procuring process for his witnesses."

As to evidence sought to be obtained from absent witnesses which is in its nature merely cumulative, as was the case here, the court has announced the following rule:

"As a general rule, a continuance should not be granted to enable a defendant to obtain cumulative evidence." Litch-.

field v. State, 8 Okla. Cr. 164, 126 Pac. 707, 45 L. R. A. (N. S.) 153; Jones v. State, 8 Okla. Cr. 576, 129 Pac. 446; Rose v. State, 8 Okla. Cr. 294, 127 Pac. 873; Kelley v. United States, 7 Ind. T. 241, 104 S. W. 604.

Other holdings of this court upon the question of granting a continuance are as follows:

"An application for a continuance should state the name and place of residence of each absent witness. It should then allege what due diligence has been used to secure the attendance of said witness, and should disclose the diligence as to each witness by stating the time at which the subpoena was issued, and when and by whom served, and that the witness was summoned to be present at the time of the trial. The better practice is to attach the subpoena for each witness, with the return thereon indorsed, to the motion for a continuance, and make it a part thereof, so that the court can tell whether or not as a matter of fact due diligence has been used. The motion should allege in general terms that the testimony of the absent witness is material and set out the facts expected to be proved by each absent witness, and it must also contain such statements as will show that such expected evidence is both competent and material. If the testimony of the absent witness cannot be procured from any other source, this fact should be stated. If it can be procured from some other source, the motion should contain a statement as to why it was not so obtained. But, if such absent testimony can be obtained from some other source, the motion must state the special facts which in reason and justice would entitle a defendant to a continuance in order to enable him to obtain cumulative evidence. A motion which does not comply with either of these requirements is bad on its face." Boswell v. State, 8 Okla. Cr. 156, 126 Pac. 826; Jones v. State, 8 Okla. Cr. 756, 129 Pac. 446; Reed v. Territory, 1 Okla. Cr. 482, 98 Pac. 583, 129 Am. St. Rep. 861; Key v. State, 10 Okla. Cr. 206, 135 Pac. 950.

"An application for a continuance, which consists of a statement of negative conclusions of fact, is not sufficient."

Reed v. Territory, 1 Okla. Cr. 482, 98 Pac. 583, 129 Am. St. Rep. 861.

"An application for a continuance should be most strongly construed against the pleader. Intendment and presumption will not be indulged in to support such application." Musgraves v. State, 3 Okla. Cr. 421, 106 Pac. 544.

Defendant's application for continuance on the ground that his attorney had not had time to prepare for trial was properly overruled. Hunter v. State, 3 Okla. Cr. 533, 107 Pac. 444.

"When an application for a continuance is based upon the ground of want of time in which to prepare for trial, and it appears that the indictment against defendant has been pending for six or seven weeks, during which time the defendant has been represented by counsel, the application is addressed to the sound discretion of the court, and his action is not subject to review, in the absence of a showing of abuse of this discretion." Johnson v. State, 1 Okla. Cr. 321, 97 Pac. 1059, 18 Ann. Cas. 300.

Counsel for plaintiff in error quotes and relies upon the case of Ennis v. State, 13 Okla. Cr. 675, 167 Pac. 229, L. R. A. 1918A, 312; but it is nowhere disclosed by the record in this case that counsel for plaintiff in error complied with or attempted to comply with sections 6037 and 6038, R. L. 1910, as was done in the Ennis Case. In the Ennis Case an effort was made to procure the testimony of absent witnesses; here no application of any kind was made to procure compulsory process for that purpose.

The second proposition discussed in plaintiff in error's brief goes to the questions of conspiracy, corroboration, and sufficiency.

The witness Akins and Sheldon testified substantially that they and Hunter, on the morning following the theft of the heifer in question, butchered the animal on Hunter's premises and

buried the hide and head in the cow lot near the shed. Akins is corroborated by the physical fact that the head and hide of the animal were found buried at the place where he stated they were. He is further corroborated by Mrs. Velva Akins, who was not his wife at the time the crime is alleged to have been committed, but was employed as a cook at the ranch at that time, and who stated that about two days after the Armistice celebration at Woodward they had no meat for supper, but did have fresh beef for breakfast, and that at noon time when she went to the bunkhouse to obtain meat for dinner the four quarters of a beef were hanging in the bunk-house.

Sheldon was a mere hired man, who was directed by his employer, in the course of his employment, to help butcher the animal in question. He was not implicated in the original theft, although he may have suspected that the animal was stolen. He testified that he noticed that it was branded with Howlett's brand. Under such circumstances, Sheldon was not a coconspirator or an accomplice; at most, he was merely an accessory after the fact. Section 2105, R. L. 1910; 1 R. C. L. "Accomplices," § 3.

Sheldon's testimony strongly corroborated the evidence of the accomplice Akins, tending to prove that the material portions of Akins' story were true. Sheldon's testimony, the testimony of Velva Akins, and the finding of the hide and head of the stolen animal, all considered together in connection with the conduct of the accused Hunter, constitute ample corroboration of the testimony of Akins.

With reference to Hunter's conduct, it was shown that, after the sheriff and Mr. Gatewood had made some search about the premises to locate the buried hide and failed to find it, Akins was brought by a deputy sheriff from the jail, and, after his arrival at the ranch, said, in the presence of the

plaintiff in error, that there was a hide, head, and feet there in the ground. The testimony of Mr. Howlett further shows that upon digging deeper at the place indicated by Akins, they found the head and the hide, but that before they completed their investigation, while they were still digging, the plaintiff in error left the investigators and went away to his house and was not present when the hide and head were found. This action of plaintiff in error was significant of guilt and tends to corroborate further the testimony of the accomplice Akins. The rule announced by this court in the case of Jolliffee v. State, 21 Okla. Cr. 278, 207 Pac. 454, which case is cited by counsel for plaintiff in error, is:

"A conviction will be set aside where the state's case rests almost wholly upon the testimony of an accomplice, corroborated only by circumstances not inconsistent with the innocence of the accused, and amounting at most to a mere suspicion."

This is not the situation in the case at bar. There was but little evidence worthy of credence before the jury, consistent with the innocence of the accused. On the contrary, the evidence as a whole points to the guilt of the plaintiff in error, and the corroboration of the accomplice was convincing and sufficient.

The gist of this action was not that of a criminal conspiracy; the conspiracy was alleged merely as an incident to the crime charged, as a foundation for the introduction of evidence, and to explain and throw light upon the transactions as a whole. These fragments of evidence tending to show other thefts of cattle and a general conspiracy to steal cattle were permitted to go to the jury, under proper instructions from the court, to enable the jury better to determine whether the particular larceny charged was established. The evidence we think was properly limited by instruction No. 6, as follows:

"Some evidence has been admitted in this cause tending to show that the defendant was engaged with others in the larceny of certain cattle at other and different dates than the date upon which the defendant is charged with the offense for which he is on trial, and in this connection you are instructed that before you can consider such evidence against the defendant in this cause, you must find and believe from the evidence beyond a reasonable doubt that he was engaged in the larceny of cattle at other and different times than that of the charge upon which he is on trial; and then you can consider such different acts of larceny, if any, only as tending to show the defendant's connection with the offense for which he is on trial."

Exceptions were taken to practically every paragraph in the court's instructions in this case. We have examined these carefully and find the instructions, separately and as a whole, fair to the defendant.

Other alleged errors have been urged, affecting the admissibility of testimony and the conduct of the court and counsel. After a painstaking examination of all the things urged by counsel for the accused, we hold that these objections are without substantial merit. To review all of these in detail would prolong this opinion to no profit.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.