## MARION JEWELL v. STATE.

No. A-6756.  Opinion Filed Jan. 19, 1929.
(273 Pac. 366.)

Paden & Douglas and Cargill & Whiteside, for plaintiff in error.

Edwin Dabney, Atty. Gen., and V. P. Crowe, Asst. Atty. Gen., for the State.

EDWARDS, P. J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Adair county of the crime of murder, and his punishment fixed at death.

The first assignment of error argued is that the court erred in denying defendant a change of venue. In his application, defendant made affidavit that the minds of the people of Adair county were so prejudiced against him that he could not have a fair trial, because of lurid accounts of the homicide carried in the newspapers of that county and widely circulated among the people. This application does not set out the facts constituting prejudice, and does not have attached three affidavits in support thereof. Defendant took the stand on the hearing on this application and testified he believed he could not have a fair trial. The state contested this showing, and offered affidavits of nine witnesses from different parts of the county who testified they believed defendant could have a fair trial. Section 2628, Comp. St. 1921, permits a change of venue on the application of a defendant, where he sets out facts showing prejudice on the part of the inhabitants of the county supported by the affidavit of at least three credible persons, residents of the county. An application is addressed to the sound discretion of the trial court, and, unless an abuse of discretion is shown, the overruling of such application is not error, and, where the showing made by a defendant is fully answered and clearly overcome by a counter showing, there is no abuse of discretion in over-

ruling the application. Johnson v. State, 35 Okla. Cr. 212, 249 P. 971.

It is next argued that the court erred in overruling defendant's application for a continuance. The offense was committed February 25. Defendant had a preliminary on March 3, and was held for action of the district court. He was arraigned on March 7, and the case was then set for trial March 17; on that date was continued until March 24, at which time the case went to trial. Judge Arnold represented defendant at the preliminary. Mr. Douglas, who appeared as attorney in the trial, was employed on March 10, and Judge Arnold withdrew on March 11. Complaint is made that counsel did not have time to prepare for trial, and that this case was advanced ahead of other cases on the docket. The showing was made that the cause was advanced on account of defendant being unable to give bond, and was set along with other defendants who were unable to give bond, ahead of other cases older on the docket. There is nothing improper in this action. In view of the fact that counsel had some 14 days from the time of his employment until the trial to prepare, and in view of the fact that the crime charged was committed at Westville, the county seat, we think there was no error in putting the case to trial on March 24. Defendant's counsel tried the case closely, and there is no indication of lack of time to prepare for trial. Westbrook v. State, 14 Okla. Cr. 423, 172 P. 464; Noel v. State, 17 Okla. Cr. 308, 188 P. 688; Hunter v. State, 23 Okla. Cr. 125, 212 P. 1014; Queen v. State, 23 Okla. Cr. 146, 212 P. 1021; Lucas v. State, 26 Okla. Cr. 23, 221 P. 798.

Some contention is made that the court erred in admitting a statement made by defendant to the county attorney prior to his having employed counsel. Some 3 days after the homicide, while defendant was incarcerated in jail, he was brought to the county judge's office and questioned by the county attorney, and his statement taken.

Defendant was advised that any statement made might be used against him, and was then asked if he would make a free and voluntary statement, to which he assented. It is well settled that the fact that a defendant is under arrest and in jail does not affect the admissibility of a voluntary statement made by him, otherwise competent, although he is not warned that such statement may be used against him. Mays v. State, 19 Okla. Cr. 103, 197 P. 1064, and authorities there cited; Taylor v. State, 27 Okla. Cr. 165, 225 P. 988.

We know of no reason why the voluntary statement of an accused person may not be taken in the absence of counsel, and no reason why at the time of making a voluntary statement he may not be questioned by the officers, so long as no methods are indulged in which would render the statement involuntary. In the statement of defendant referred to he stated he had been convicted of a violation of the prohibitory liquor law, and this was introduced along with the other part of the statement. It is now urged that this constitutes an attack on the character or reputation of defendant when he had not placed it in issue. There might be some force in this contention if defendant had not later taken the stand and testified that he acted in self-defense. This was, in substance, the same statement made by him to the county attorney. Upon cross-examination he testified he had been convicted. Having taken the stand, this evidence of a former conviction was admissible. In this connection, however, it may be well to state that an objection to this part of the statement was not specially pointed out, but the objection was to the statement as a whole, on the ground that it was inadmissible as not being voluntary, and for the reason that defendant at the time was not advised of his right to counsel. His counsel not having objected to this particular part of the statement, he is not in a position now to assert that its admission was error. Wratislaw v. State, 18 Okla. Cr. 150, 194 P. 273; Deupree

v. State, 27 Okla. Cr. 87, 224 P. 993; Reagan v. State, 35 Okla. Cr. 332, 250 P. 435.

Next it is urged that the court unduly restricted the cross-examination of the state's witness, Oma Kirk. The court did too closely limit the cross-examination of the witness, but he informed counsel at the time that the matter sought to be brought out on cross-examination might be asked the witness upon his making her his witness for that purpose. This was done, and the witness testified fully to the matters sought to be elicited. Such error as there may be upon this point is inconsequential, and was cured by the testimony of the witness later on. Lucas v. State, 26 Okla. Cr. 23, 221 P. 798.

Several other assignments of error are touched upon in the briefs, among them the matter of the refusal of the witness for the state, Oma Kirk, to talk to defendant's counsel. This witness, in the face of an admonition from the trial judge and the counsel for the state, for some reason at first declined to talk to defendant's attorney, but it appears that on the morning before the case went to trial she did inform counsel she was willing to talk to him, and counsel did not avail himself of the opportunity.

Also there is some contention that there was error in overruling the challenge for cause to the juror Creekmore, and also in one of the court's instructions. The voir dire of the juror shows him to be qualified. No exception was taken to the instruction complained of. We have examined fully these and the other matters discussed in the briefs. None have been overlooked, and no other assignment is of sufficient importance to require special discussion.

On account of the gravity of this case and the fact that the highest judgment known to the law, the death penalty, has been imposed, we have scrutinized the record and evidence with care. The record discloses that on the

night of February 25, 1927, defendant with Oma Kirk and Jack Robbins were in an automobile, and had stopped on the street in the residence section of the town of Westville when Tom Rather and J. R. Maberry, night policemen, came up. Rather inquired who was in the car, and defendant inquired who Rather was, and then got out of the car, and almost immediately fired two shots and killed Rather. There was some testimony that words in the nature of a quarrel passed between defendant and Rather just after defendant stepped out of the car, and also some testimony that there was ill feeling between the two, and that deceased had made threats against defendant. The defendant testified that at the time of the shooting he believed deceased was about to shoot him and that he acted in his necessary self-defense.

As a matter of judicial history, it is well known that many states have abolished the death penalty. In those states in which it is yet a part of the criminal code, it is inflicted only in the most extreme and aggravating cases. Here the evidence, we think, amply sustains the charge of murder; but, considering all the evidence from the viewpoint both of the state and the defendant, we have reached the conclusion that justice requires that, under all the circumstances, the judgment should be modified by reducing the punishment from the death penalty to imprisonment for life at hard labor.

The judgment is modified from the death penalty to imprisonment for life at hard labor, and, as modified, the case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.