## SAM GRADINGTON v. STATE.

No. A-8909.   Sept. 27, 1935.
(49 Pac. [2d] 808.)

Owen F. Renegar, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, hereinafter for convenience referred to as the defendant, was convicted of murder and his punishment fixed at death by electrocution.

The testimony in substance shows that Marie Jones, a colored woman, on the 28th day of September, 1934, lived

with her children at 837 East Noble street, Oklahoma City, Okla.; that the defendant, a colored man, lived in the same block and only two doors from the home of Marie Jones, on the same side of the street, on the date of the killing; Marie Jones had known the defendant since 1932; on the afternoon that the defendant shot and killed Alfie Jones, a daughter of Marie Jones, the defendant had been to the home of Marie Jones, and had some conversation and argument with Marie Jones and one of her sons, in which conversation and argument the record shows he used abusive language to Marie Jones; the conversation and argument seems to have been regarding Alfie Jones in which the defendant was trying to get Alfie to go to his house for immoral purposes.

The record further discloses that after the defendant left Marie Jones tried to get her son to call the officers, and he did not do so, not anticipating any further trouble; a few minutes after the defendant left the Jones home he returned, came upon the porch, and kicked or broke the door open and came in; Alfie Jones was sitting on the floor and her sister-in-law was combing her hair; when the defendant entered, he had a shotgun in his hand; Alfie jumped up and started to run and defendant shot her in the back; she entered the dining room or kitchen and fell, dying within a few seconds. The defendant made an effort to shoot Marie Jones, but the shell hung in his gun, and he immediately left the Jones home.

The record shows he left the gun at his home and went to the county jail and surrendered, telling the county jailer he had shot the girl through the window. The next day the defendant made a complete confession to the county evidence man, admitting he shot the girl, and in detail telling the circumstances.

Marie Jones, several of her children, and a daughter-in-law testified to the entrance of the defendant in to the Jones home, and the firing of the shot that killed Alfie, and then trying to shoot Marie Jones. The defendant offered no testimony, but stood on the evidence of the state. At the close of the testimony, counsel for the defendant made the following motion: "Comes now the defendant, and moves the court for a directed verdict of not guilty, for the reason that the state has wholly failed to make out a case as charged in the information filed here." Which motion was by the court overruled, and exceptions saved, and the defendant then rested.

The defendant has assigned six errors alleged to have been committed by the court in the trial of the case. The first assignment is: "That said court erred in overruling the motion of plaintiff in error for a new trial."

This assignment covers all the questions raised by the defendant in his other assignments. The defendant in his brief stated the court erred in admitting incompetent and highly prejudicial testimony. When the state called Charles Nashert, the county jailer, he testified to statements made to him by the defendant when he came to the jail to surrender. An examination of the witness Nashert's testimony shows the defendant came to the county jail to surrender to Nashert, and witness stated, I asked him what he had done, and he said he went up to a house and shot through a window. Counsel for the defendant objected, and asked the witness if before he asked him the question as to what he had done, "Did you tell him whatever he might say could be used against him?" Witness answered, "I do not know whether I did or not." The question of the witness, to the defendant, as to what he had done was for the purpose of ascertaining why he desired to

surrender to the witness. It was a conversation necessary for the jailer to learn why the defendant desired to surrender to him. The court did not err in admitting the statement.

The defendant next complains that the court erred in admitting, over the objection of the defendant, a statement purported to be signed by Sam Gradington, the defendant, taken in the presence of C. M. Tyler, county evidence man, Bill Eads, and Clint Myers, all of whom were officers of the law, before the defendant had been permitted to consult an attorney as to his rights. The defendant insists that the admission of the written statement was highly prejudicial to his rights; it was taken from him while in a condition that was involuntary and without having talked to counsel, and the court erred in admitting the statement. The record shows that the defendant made the statement freely and voluntarily. This court has held that:

"A statement freely and voluntarily made by a defendant, otherwise competent, is not rendered incompetent by the fact that he was under arrest at the time, was not represented by counsel, and that same was made in response to questions propounded by the officers." Jewell v. State, 41 Okla. Cr. 389, 273 Pac. 366, 367.

Before the written statement was introduced in evidence counsel for the defendant asked the witness Tyler, if he informed the defendant that his statement might be used against him in the trial of the case against him for murder and witness answered, "Yes, sir." Witness also stated he gave the statement to the defendant to read, and that he was sure he read it to the defendant.

It is clearly shown that no inducement was offered to the defendant to make the statement; the statement which he made, and which was reduced to writing, was

made voluntarily. The statement introduced and identified in evidence was signed by the defendant and sworn to before Clara B. Kelly, notary public. The fact that the defendant was in custody when he made the statement does not render it incompetent. Mays v. State, 19 Okla. Cr. 102, 197 Pac. 1064; Carr v. State, 21 Okla. Cr. 377, 208 Pac. 275.

It is clearly shown by the record that the confession of the defendant was made by him without any threat, promise, or inducement, and the court did not err in permitting it to be introduced as evidence.

The next question discussed by the defendant is that if the testimony of the jailer and the confession were excluded, there is no competent evidence to sustain a verdict of guilty. With this contention we cannot agree. While the record clearly shows the testimony complained of by the defendant was admissible, yet the testimony of the eyewitnesses shows the defendant premeditatively and in cold blood entered the home of the deceased, Alfie Jones, and without any justification killed this young girl. The testimony conclusively shows the defendant guilty of willful murder. Under the evidence in this case, the jury properly performed its duty and returned a verdict of guilty of murder, imposing the death penalty by electrocution.

It is argued by the defendant that this court has power to modify the judgment where it is excessive. That is true, but if there ever was a case where electrocution was justified, this is one, and this court will not hesitate to do its duty and say that the verdict of the jury and judgment of the court should be carried out.

The defendant was accorded a fair and impartial trial. There are no reversible errors in the record. The evidence

is sufficient to sustain the charge of murder. The judgment is affirmed.

The original time for the execution having passed during the pending of this appeal, it is considered, ordered and adjudged by this court that the judgment and sentence of the district court of Oklahoma county be carried out by electrocution of the defendant, on the 6th day of December, 1935.

EDWARDS and DOYLE, JJ., concur.