OF THE

## STATE OF IOWA.

AT

## DES MOINES, OCTOBER TERM, A. D. 1903.

AND IN THE FIFTY-SEVENTH YEAR OF THE STATE.

---

STATE OF IOWA v. HAYDEN KING, Appellant.

Larceny: POSSESSION OF STOLEN PROPERTY: EVIDENCE. In a prosecution for larceny, the truthfulness of defendant's explanation of his recent possession of the stolen property is for the jury to determine.

Good Character. Proof of good character is not a defense and will not overcome the inference of guilt to ·be drawn even from purely circumstantial evidence.

Possession of Stolen Property: PRESUMPTION. Where it appears that a larceny, if committed, must have been from a building, the same presumption as to recent possession of the stolen property arises, as when one charged with burglary is found in possession of property stolen in committing that crime.

Evidence: EXCLUSION. In a prosecution for larceny, the rejection of evidence as to whom defendant had been with the night before, was not prejudicial, as under the facts shown it would not have tended to implicate such person.

---

*The figures on the left of the syllabi refer to corresponding figures on the margin of the case at the place where the point of the syllabi is decided.

Same.  On a prosecution for larceny of a watch from a room-mate, the exclusion of evidence by defendant as to whose duty it was to lock the door upon retiring, in view of the record, is held to have been without prejudice.

Evidence.  The court may on its own motion refuse repeated inquiries of a witness, upon the same subject.

Same.  Error in excluding evidence is cured by its subsequent admission.

Same.  A witness should not be permitted to state his supposition.

Evidence of Other Crimes.  In a prosecution for larceny, evidence as to whether any burglaries were committed in an adjoining building during the night of the larceny, is inadmissible.

*Appeal from Polk District Court.*—HON. S. F. PROUTY, Judge.

. TUESDAY, OCTOBER 6, 1903.

THE defendant was convicted of larceny from a building, and appeals.—*Affirmed.* .

*C. C. Cole* for appellant. .

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

. LADD, J.—One Holland returned to his room at 11 o'clock p. m., Saturday evening, March 22, 1902, and immediately retired. The accused, who had been occupying the same room since the Monday previous, was playing at solitaire. Both were attending school, and had been made acquainted by a mutual friend with whom defendant was to room after one week. When Holland arose the next morning, he discovered that his watch and a small amount of money had been stolen. The police were notified, and shortly after April 1st the watch was located in a pawnshop. The defendant had caused his name to be inscribed on the case, and had pledged it that day for a loan of $5 in the name of Henry Wilson. A few days later, upon returning for an additional dollar, he was informed that

the watch was stolen property, and, upon inquiry by the proprietor, gave his then place of residence. Some days before, he had pledged it at another shop for a loan of $3 in his own name, having subsequently redeemed it.

On the trial he attempted to explain this recent possession of the stolen property by saying that on Monday morning after the larceny, while on the street with one

I. POSSESSION of stolen property: evidence. Hillman, a stranger named Medbury, whom he had met once before, approached the latter, and requested a loan of $5, offering to put up his watch as security; that, as Hillman did not have the money, he made the loan; that Medbury represented himself to be a traveling man, and expecting money by wire before noon; that the money was to be returned, with fifty cents for its use, at that locality, at noon of the same day; that, though defendant was there at the appointed time, the borrower did not appear, and for this reason the watch was forfeited by the terms of the loan. This story is fully corroborated by the testimony of Hillman, and, appellant insists, so fully explains the possession of the watch that the finding of the jury ought not to stand. Medbury was not called as a witness, and, though the transaction is said to have taken place little more than twenty-four hours after the larceny, no mention of it is shown to have been made to Holland, whose watch appellant claims to have never seen. His excuse for pledging the property at the last shop in a fictitious name is that the shops were inspected by the police, who required a report of the names of all patrons, among whom we infer he did not care to have his name appear. The pretense that recent possession of stolen goods has been obtained by purchase from a stranger is an explanation commonly interposed by those accused of the larceny, and, it may be added, when somewhat discredited by the attending circumstances, as in this case, as commonly rejected by the good sense of jurors. *State v. Marshall,*

105 Iowa, 38. The story bears ear marks of fabrication. For a stranger to approach a couple of schoolboys for a loan of this kind .on a principal street was somewhat remarkable, and especially so soon after his roommate's watch had been stolen. Still more remarkable was it that the suspicions of the defendant, who knew of the theft of such an article within a few hours previous, were in no way aroused. Strange that he should redeem the watch at the shop where first deposited in his name, and so soon afterwards pawn it at another in a fictitious name. Curious that he did not wish the police of the city to know his name, especially after he had suggested to Holland, on the morning after the watch was stolen, that it would doubtless be pawned by the thief. Without elaboration, it is sufficient to say that the truthfulness of the explanation was solely for the jury's determination.

II. But appellant insists that, as the evidence was purely circumstantial, the proof of good character ought to be held so far defensive as to overcome any inference of guilt to be drawn therefrom. Such evidence, however, has been frequently declared to afford no defense. It is received as merely tending to show that the accused would not have been likely to have committed the crime charged, and is to be given such weight only as the jury may deem it entitled to receive. *State v. House*, 108 Iowa, 68; *State v. Northrop*, 48 Iowa, 583.

2. GOOD character.

III. The court gave the usual instruction with respect to the presumption arising from the recent possession of stolen property, and submitted particularly the explanation offered by the defendant. The criticism that it cast the burden of establishing his innocence upon the accused is disposed of by *State v. Hessians*, 50 Iowa, 135, and *State v. Richart*, 57 Iowa, 245. But it is said this rule ought not to be applied where the property is alleged to have been taken from a building. The last of the above decisions is an authority

3. POSSESSION of stolen property: presumption.

to the contrary. There are cases, doubtless, where the presumption would not extend beyond the mere fact of larceny to that from a building; but when, as in this case, it must have been committed from the building—the room —or not at all, we think the presumption extends to the offense charged, and that precisely the same inference arose as where one charged with the crime of burglary is found in the recent possession of property stolen in committing that crime. *State v. Swift*, 120 Iowa, 8; *State v. Golden*, 49 Iowa, 48; *State v. Rivers*, 68 Iowa, 616; *State v. Frahm*, 73 Iowa, 355; *State v. Yohe*, 87 Iowa, 33. The contention that important facts are omitted in enumerating those to be taken into consideration, and that the instruction is in the nature of an argument for conviction, is utterly without foundation.

IV.  On cross-examination Holland testified that he had not been drinking the evening prior to the larceny, and that on the way home between ten and eleven o'clock

**4. EVIDENCE: exclusion.** p. m. he had counted his money, some two or three dollars. "Who had you been with?" was then asked by defendant's counsel, and the objection that the question was immaterial and not cross-examination, sustained. This ruling is said to be erroneous for the reason that an answer would have tended to point out Hollands' associates, and aided in identifying the person who committed the larceny. All proven by Holland was that his watch had been stolen from the room, and this answer would not have affected such proof. The mere fact that he had been with some one the night previous would not have tended to implicate such person, and, in the absence of all other incriminating circumstances, the rejection of the answer must be regarded as without prejudice.

V.  Holland testified that, when asked why he had not locked the door, defendant answered that he had forgotten it, and then this question was propounded: "Was it not your business to lock the door when you came in

there?" The same objection last interposed was sustained. It is to be observed that the question

5. SAME.

does not call for any previous understanding between the parties, but simply for the witness' conception of what was his duty, and this we conceive to be wholly immaterial. But the defendant, when on the stand, was asked, "Was there any arrangement between you as to who should lock the door that night?" The answer to this, it is claimed, would have shown that the last coming in was to lock the door, and that this would have met the argument that defendant was last. to bed, and had purposely left the door unlocked, so that it might appear that some one from the outside had entered and committed the larceny. If this was the purpose, the question failed to indicate it. He had not claimed that on retiring he sup-. posed the door fastened, nor did he deny saying to Holland that he had forgotten to lock it. If he knew it was unlocked, evidence that Holland ought to have attended to that would in no way relieve the accused. While the court might well have ruled the other way, we are convinced that the exclusion of the testimony, in the state of the record as presented, did not exert the slightest influence on the conclusion of the jury.

VI. Holland, after saying both on direct and cross-examination that his pocketbook had but a few pennies in it, was asked to. tell "whether your money was not in

6. EVIDENCE.

your pocketbook?" The objection was properly sustained, in the absence of specific objection. The court is not bound to allow endless repetitions, and, after a subject had been exhausted, may properly, even on its own motion, put an end to the inquiry.

Hillman had testified that the stranger from whom the watch was said to have been obtained first proposed to borrow $5 from him, and that he had told him he did not have it, unless King had some money he would let him take, and later was asked, "Why did you not let him have

the $5 and take the watch?"   Appellant argues that this was material, as tending to show that the refusal was owing to want of means, rather than any doubt of the stranger's good faith.   But the ground of refusal had been stated in detailing the transaction.   Moreover, the state of Hillman's mind was wholly irrelevant to the controversy.

Hillman was also asked: "What arrangement was made about the $5?   Was it to be returned?"   As he subsequently testified that the money was to be returned at noon of the same day, and at the same place, the ruling, even if erroneous, was without prejudice.

7. SAME.

The defendant, in relating the story of the interview with the stranger, testified that as they were turning from the entrance to a bowling alley "somebody called Hillman to one side.   I supposed it was an acquaintance of his."   Thereupon the state "objected to that supposition," and upon motion it was stricken out.   The ground of objection is included in the designation of the remark as a supposition, and manifestly it was properly stricken.

8. SAME.

One Lamb testified that he lived in a flat adjoining the one in which Holland and defendant roomed, that there was no communication between the apartments except at the outer entrances, and was then asked whether any burglaries were committed therein on the night in question.   Objection to this and to other questions of similar import were sustained, and, we think, properly so.   The evidence had no bearing on the issues involved.   No one would claim that the state might have offered proof that defendant in fact committed the burglaries intimated as tending to establish his guilt. That some one else may have done so in no manner indicates his innocence of the larceny charged.

9. EVIDENCE of other crimes.

The record is without prejudicial error, and the judgment must be and is AFFIRMED.