## STATE v. LARIS.

No. 4945. Decided August 15, 1931. (2 Pac. [2d] 243.)

184

*H. L. Mulliner* and *E. D. Hatch,* both of Salt Lake City, and *Ray E. Dillman,* of Roosevelt, for appellant.

*Geo. P. Parker,* Attorney General, and *L. A. Miner,* Deputy Attorney General, both of Salt Lake City, for the State.

## EPHRAIM HANSON, J.

The defendant was convicted in the district court of Uintah county of grand larceny and sentenced to an indeterminate term in the penitentiary. From the conviction and judgment he appeals.

By appropriate assignments of error the appellant inter alia challenges the sufficiency of the corroborative evidence to sustain a conviction on the testimony of an accomplice.

The defendant alone is accused of having committed the crime. In the information it is charged that the defendant on or about the 9th day of August, 1929, "did feloniously take, steal and drive away two head of white faced heifers each branded $\underset{v}{\rho}$ on the right ribs, the property of C. W. Killian, with intent to deprive the owner of said animals."

It appears that C. W. Killian, one of the state's witnesses, was a resident of Roosevelt and owned about sixty head of various breeds of cattle, which he kept, during the summer months, in a 160-acre pasture at Leeton. The pasture is situated in Uintah county, about nine miles from Roosevelt. It further appears, without conflict, that Edgar Greenstick, an Indian, stole the two heifers described in the information, together with a white-faced cow, from Mr. Killian's pasture, and drove them about two and three-fourths miles to a pasture belonging to Johnny White, an Indian. Johnny White was married to Greenstick's cousin, and lived on the place to which the cattle were driven. The defendant was not present, nor is it contended that he took part in the actual taking and driving of the animals to Johnny White's place. Just the exact date on which the larceny was committed cannot be determined with absolute certainty. Mr. Killian testified he was at his pasture on August 4, 1929, for the purpose of tending to a stream of water which he then had running on his land, and that while there he saw the heifers. He made a count of his cattle at that time. His count, however, showed but fifty-six head when there should have been sixty-one. Except

for the statement of Mr. Killian and the testimony of the Indian, the animals might have been taken as early as the latter part of July, but it is certain they could not have been taken from Killian's pasture later than the 6th of August.

It is conceded by the prosecution that the Indian, Greenstick, is an accomplice, and to sustain the verdict against the defendant the Indian's testimony in respect to the defendant's complicity in the crime must be corroborated. The Indian's testimony was received through an interpreter, and there is considerable confusion and some marked contradictions in portions of his testimony. We are giving what appears to us a full and fair statement of those features of his testimony which it is contended involves the defendant in the commission of the larceny. Some time after March 3, 1929, the Indian, according to his testimony, met the defendant near White Rocks, on the public highway. They had a conversation which resulted in an understanding between them that the defendant would pay him if he would go out and get or "rustle" some cattle for the defendant. On July 22d, which was the opening day of the sun dance, an Indian ceremony held at White Rocks, the Indian came to the defendant's home at Roosevelt and talked some more on what he called "the deal." This meeting, according to his testimony, resulted in the defendant advancing him $4 for the sun dance, and the defendant telling him to go above or in the vicinity of Hayden and get some cattle.

In this connection we may here state, parenthetically, that the defendant testified that the Indian said to the defendant that he had a couple of cows he wanted to sell him. The defendant then told the Indian that he was going to Bingham that same day or the day following. The Indian said he wanted to sell the cows so he could get some money for the sun dance. The defendant told him that he would be gone for three or four days, and the Indian then asked the defendant if he could not give him a few dollars to spend at the sun dance, and the defendant gave him a check for

$4 and told him that when he came back that he would go up and look at his cows. This check was received in evidence on the defendant's offer.

After the sun dance, the Indian took two or three head of cattle from somewhere in the vicinity of Hayden and drove them away, and put them in some other pasture from which they shortly broke out. As the Indian was on his way down to Roosevelt to inform the defendant that he had some cattle, he saw the cattle on the highway and put them into the corral at the "Poor Farm." He then went down to see the defendant, and the defendant promised to meet him at the corral, but failed to keep his appointment. The cattle broke out of the corral, or some one turned them loose. On August 4, 1929, while on the way to Roosevelt to tell the defendant of the fact, he met the defendant at a Mr. Timothy's place, near the "Gyp" plant north of Roosevelt.

Whatever was said or done on this occasion took place in the presence and hearing of Mr. Timothy and a Mr. Davis, of Vernal, both of whom were witnesses for the defendant at the trial. There is a sharp conflict between the testimony given by the defendant and his witnesses and the testimony given by the Indian as to what was there said and done. It is sufficient to say in respect to the testimony as to this event—and the prosecution does not claim anything to the contrary—that, except for the testimony of the Indian, there is nothing which tends to connect the defendant even remotely or in the slightest degree with the commission of the offense charged. We will not, therefore, advert further to the evidence of what was there said and done, except to now say that the Indian testified that the defendant there told him to go up to Leeton and get some cattle, and, when he had taken and placed them, to come and let the defendant know. There is some uncertainty in his testimony as to the exact place he was to deliver the animals, but we think a fair conclusion of the evidence is that it was to be at the corral of Johnny White. He testified that he alone then went up to Killian's pasture

at Leeton and took and drove away the cattle as has already been stated. Very early on the morning of August 7th, he went down to the defendant's home at Roosevelt and told the defendant that he had the cattle. As the defendant had already made his plans for that day to go to Price, he could not go up for the cattle until the following day, August 8th. From this point there is little material conflict between the testimony of the defendant and the Indian. When the defendant told the Indian he could not go up for the animals until the morrow, the Indian asked the defendant for money to get a tire for his Ford car, so that he could take his squaw to the Uintah Basin industrial celebration to be held at Ft. Duchesne on the 7th, 8th, and 9th of August. With the defendant's permission, the Indian went to a garage at Roosevelt and secured the tire on the credit of the defendant, after which he came back to defendant's residence and got a check for $4 which the defendant testified he advanced to him as an accommodation to the Indian on the strength of his repeated statements that he had the "cows" for sale, and of the Indian's manifest anxiety about being able to get his car in shape so as to permit him and his squaw to attend the celebration. On the defendant's offer, this check was also received in evidence.

On the 8th day of August, the defendant, having with him his eleven year old boy, went to Johnny White's place, and, with the assistance of Greenstick, loaded the two heifers into his truck. The loading occurred between 9:30 and 11 o'clock a. m. As soon as he came to the corral, the defendant saw and greeted Johnny White, who was some distance away attending to a stream of water running on his land. Before leaving the corral, the defendant gave Greenstick another check for $10. This check, too, was received in evidence on the defendant's own offer as a part of his direct examination. The balance due the Indian was to be paid when the defendant had disposed of them at Price. The defendant hauled the two heifers to Roosevelt, taking the usual and ordinary route. He unloaded them at

12:30 p. m. into an open corral situated alongside the general highway from which they were seen within thirty minutes by Mr. Killian, the owner, as he was driving past on his way to Ft. Duchesne. Mr. Killian went to the corral and immediately recognized the heifers as being his own. They had both his marks and brand. Soon thereafter Mr. Killian had a conversation with the defendant wherein the defendant told Mr. Killian that he had bought them from the Indian, Edgar Greenstick. That afternoon, while attending the Uintah Basin industrial celebration at Ft. Duchesne, the defendant was arrested.

The defendant lives at Roosevelt, Duchesne county, and and has been engaged in the business of buying and selling cattle, hogs, and poultry for more than twelve years. He conducts a sort of slaughteryard, and sometimes kills the animals and vends the meat. Edgar Greenstick, the Indian, has a small farm on which he and his squaw live, located in the vicinity of White Rocks, in Duchesne county. He knew the defendant well and the defendant knew him, and defendant had bought cattle from him within the preceding year. The Indian at one time had ten head of cattle. He said that he had sold cattle to the defendant on various occasions until he had sold them all to him. The defendant denied that he had bought them all; some of them, he said, were "too thin." It is conceded that the defendant bought some of them during the preceding year, and that on January 4, 1929, he bought a steer for which he paid the Indian $50, and on March 3, 1929, he bought two calves for which he paid $30. The payments were made by checks and these were received in evidence on the defendant's offer.

The Indian was, of course, an accomplice. As shown by his testimony, the complicity of the defendant consisted wholly in advising, encouraging, and inducing him to steal the animals in question and to deliver them to defendant at the corral of Johnny White. Of this there is no direct evidence in the record other than his testimony. For the necessary corroboration the state must therefore rely on circumstantial evidence. The question presented by the

assigned error we are now considering is the sufficiency of the corroborative evidence. The rule prescribed by our statute in respect to corroboration is found in Comp. Laws Utah 1917, § 8992, and reads as follows:

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof."

In applying this statute, this court has frequently held that the test of the sufficiency of the corroborative evidence is that it need not be sufficient in itself to sustain a conviction, but it must in and of itself tend to implicate and connect the accused with the commission of the crime charged, and not be consistent with his innocence. It is insufficient if it merely casts a grave suspicion on the accused. *State* v. *Cox* (Utah) 277 P. 972; *State* v. *Butterfield,* 70 Utah 529, 261 P. 804; *State* v. *Lay,* 38 Utah 143, 110 P. 986, 987; *State* v. *Spencer,* 15 Utah 149, 49 P. 302.

Another test which has been quite generally approved is one suggested in *Welden* v. *State,* 10 Tex. App. 400, as follows:

"Eliminate from the case the evidence of the accomplice, and then examine the evidence of the other witness or witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no inculpatory evidence, there is not corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him."

See also, *People* v. *Morton,* 139 Cal. 719, 73 P. 609.

The state insists that there is ample evidence independent of the Indian's testimony to meet the requirements of the statute. In support of this assertion it relies principally upon the defendant's exclusive possession of the recently stolen heifers and the explanation made by defendant to Mr.

Killian in the course of the conversation which took place at defendant's corral.

In its argument in this connection the state invokes the rule declared by Comp. Laws Utah 1917, § 8285, which, after defining larceny, provides:

"Possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt."

It is undoubtedly a correct principle, approved by the courts without exception, that in a prosecution for grand larceny, when there is no direct evidence as to the party guilty of the felonious taking and the asportation of the property, evidence of the larceny and the possession in the accused of the recently stolen property, together with an unsatisfactory explanation of his possession, will warrant a finding that the accused—the possessor of the stolen property—is the thief. This is so independently of the statute. Indeed, some courts hold that proof of the larceny and of possession by the accused of the recently stolen property alone is sufficient to warrant such a finding. It seems, therefore, to have been the purpose of the statute to overcome any uncertainty on this question in this jurisdiction by declaring in favor of the stricter rule. *State* v. *Potello*, 40 Utah 56, 119 P. 1023; *State* v. *Converse*, 40 Utah 72, 119 P. 1030.

It should be observed that the only inference which the triers of fact are justified under the statute in drawing from a proved larceny and the accused's exclusive possession of recently stolen property where the accused fails to satisfactorily explain his possession runs to and establishes the missing fact—that the possessor of the stolen property is the thief, the one who feloniously took and carried away the property. In such a case the inferred fact sustains a logically relevant and reasonable relation to the proved fact. The existence of the proved facts renders probable the existence of the inferred fact. 22 C. J. 158.

In the instant case, however, we are confronted with an entirely different situation.  By the direct and positive evidence of the state, it has been shown that the Indian was guilty of the felonious taking and driving away of the animals.  Not only is the larceny shown by the ■ state's evidence, but the party who committed the larceny is also shown to be some one other than the defendant.  The inference that might have been drawn in the absence of such evidence, from the defendant's possession of two of the recently stolen animals and the unsatisfactory explanation of his possession—should it be assumed that his statements as to where the animals were loaded was at all material and unsatisfactory—becomes inoperative in the light of the actual facts disclosed by the state's evidence that the Indian committed the larceny.  22 C. J. 156, § 88; Lawson on Presumptive Evidence (2d Ed.) 659; *State* v. *Converse,* 40 Utah 72, 119 P. 1030.

It is plain, therefore, that the defendant's possession of the two heifers, under the facts in this case, whether considered in connection with, or independently of, the statute, does not "in itself and without the aid of the testimony" of the Indian tend to connect or to implicate the defendant with the commission of the crime charged and of which he was convicted.

The case of *State* v. *Potello,* 40 Utah 56, 119 P. 1023, is conclusive against the contention here urged by the state. The defendant was prosecuted for the larceny of a horse. In making its case, the state failed to prove the larceny, but showed that the animal had strayed away from the owner's premises, and recently thereafter was found in the defendant's possession.  The defendant testified to circumstances which, together with what was shown by the state, proved the larceny, but which also showed that he had bought the horse from two men whom the evidence showed were guilty of the larceny.  It was held that under the statute the state cannot rely on the defendant's possession of recently stolen property as evidence of his guilt, if the

only evidence of the larceny is that given by the defendant when such evidence shows that the larceny was committed by some one other than the defendant, even though he may not have given a truthful or satisfactory explanation of his possession.

The other witnesses called in behalf of the state were Mr. and Mrs. Killian and Johnny White. Mrs. Killian heard the conversation between Mr. Killian and the defendant. It is shown by Mr. Killian's testimony that the animals belonged to him and were branded with his brand; that he had not sold them, and they were taken from his pasture without his knowledge or consent; that he had sold cattle in the past, and had sold some to the defendant. It is not shown that defendant knew Mr. Killian's brand. This evidence does no more than show that the crime was committed. The statute expressly says that this is insufficient corroboration. In itself it does not implicate or tend to connect the defendant with the commission of the offense.

The state has, however, attached so much importance to the defendant's explanation of his possession of the animals that we have deemed it advisable to set out the conversation practically verbatim as given by Mr. Killian. Defendant told Mr. Killian that he had bought the heifers from Edgar Greenstick, an Indian, and further said:

"* * * He has another one. I think the mother of one of these.
"Killian asked: Where is the other one?
"The defendant said: Up at his place.
"Killian asked: Where is his place?
"Defendant: Up on the bench near Jimmie Nephi's.
"Killian: Did you buy them off him, Louie?
"Defendant: * * * I bought them but I haven't paid him for them.
"Killian: Well, Louie, you know they are my cattle and I want them.
"Defendant: No, they are not your cattle. They are wild; they are Indian cattle. White men's cattle won't be that wild."

The witness, after having been twice examined and recalled, remembered that he had asked the defendant where he had loaded the cattle, and that the defendant answered:

"Up at Edgar's place, near Jimmie Nephi's."

It thus appears from Mr. Killian's testimony, although denied by the defendant, that the defendant had made an untruthful statement as to where the heifers had been loaded, and as to the place where the cow was kept. He freely and truthfully told how and from whom he acquired the possession of the animals. Can it be a material incriminating circumstance to represent, if he did, that he loaded the heifers at the accomplice's place, rather than at Johnny White's place? He frankly and truthfully volunteered to Mr. Killian that the accomplice had another animal that was probably the mother of one of the heifers. Can it then be urged, because he said the animals were at the accomplice's place rather than at Johnny White's place, that that is such an inculpatory circumstance as to justify an inference that he advised and encouraged the Indian to steal and drive away the animals? If for this reason it cannot be said that this conduct is entirely consonant with innocence, we are satisfied that it does no more than cast a mere suspicion on the defendant, which, as we have already seen, is wholly insufficient corroboration. We may say in this connection that Edgar Greenstick's place is only about five miles southeast of Johnny White's place, although they are in different counties. From Roosevelt they are reached by the same highway.

The evidence of Johnny White is stressed with particular emphasis in the state's brief as being corroborative of the Indian's testimony. It is contended that, because Johnny White saw the defendant and the accomplice load two of the three stolen animals into the defendant's truck and the defendant drive away with them, as the accomplice testified had been done, White's testimony is therefore corroborative of the accomplice's testimony. But does the circumstance of the defendant receiving two animals from the accomplice at the corral of Johnny White and loading them into his truck with or without the assistance of the accomplice in itself tend to connect the defendant with the commission of the offense charged? We think not. We do

not see that any incriminating inference can reasonably be drawn from that circumstance. In itself, it is entirely consistent with an innocent transaction. No suggestion is made in behalf of the state that there was anything incriminating in the fact that the defendant received the animals from the Indian at Johnny White's corral. As hereinbefore stated, much was made of the alleged false statement by the defendant to the effect that he had loaded the animals at Greenstick's farm, when in fact he loaded them at Johnny White's corral. This feature was stressed by the state because it involved an untruthful statement asserted to have been made by the defendant. No importance was attached to it because as a fact the animals were loaded at Johnny White's corral. It must be obvious that this circumstance in itself does not implicate or tend to connect the defendant with the commission of the offense charged in the information.

"The accomplice may state any number of facts, and these facts may all be corroborated by the evidence of other witnesses; still, if the facts thus corroborated do not tend to connect the defendant with the crime, or if they do not point pertinently to the defendant as the guilty party or as a participant, this would not be such corroboration as is required by the Code." *Welden* v. *State*, supra; *State* v. *Cowell*, 149 Iowa 460, 128 N. W. 836.

In the state's brief, it is specifically stated that the corroborative evidence on which the state relies is the testimony of Johnny White and Mr. Killian, which we have just stated, is wholly insufficient. No mention is made of any other fact or circumstance claimed to have ■ any evidentiary value as corroborative of the testimony of the accomplice. We have, however carefully considered the entire record, and we are satisfied that, when the testimony of the accomplice is eliminated, the other evidence in the case falls far short of the requirements of the statute to establish the necessary corroboration for the reasons heretofore given.

From this conclusion it follows that the conviction and judgment imposed on the defendant must be reversed, and the cause remanded to the district court for a new trial.

Other errors are assigned, some of which will probably arise on another trial, and, inasmuch as the case is to be remanded for a new trial, these will require our consideration at this time.

The appellant complains because the court overruled his motion to quash the information. In his motion to quash, the appellant took the position that the district court had not acquired jurisdiction of the cause, for the reason that the justice of the peace before whom the preliminary examination was held had not indorsed on the complaint an order holding the defendant to answer to the charge in the district court, as required by Comp. Laws Utah 1917, § 8755, nor that such order, if made, had been signed by the justice of the peace.

It appears from the record of the justice of the peace that, although the order holding the defendant to answer in the district court was not indorsed on the complaint, such an order had been made and entered by him in his docket with the other proceedings had in the case, and a transcript of the docket duly certified to by the justice of the peace was filed with the complaint and other papers in the case in the district court. This was held in the case of *State* v. *Crook*, 16 Utah 212, 51 P. 1091, to be a sufficient compliance with the statute in question. These assignments are without merit.

Exception was taken to the giving of instruction No. 7, and the giving of the same is assigned as error. It is as follows: "You are instructed, gentlemen of the jury, that if you shall find from the evidence that the witness Greenstick represented to the defendant that the heifers described in the information belonged to him, Greenstick, and offered to sell the said heifers to the defendant, and the defendant agreed to purchase said heifers

and received the same in good faith, believing them to be the property of Greenstick, then I charge you that your verdict must be not guilty."

The appellant urges two reasons why the instruction is erroneous: First, even though it were incumbent on the defendant to establish his good faith in the purchase of the heifers, to do that, the instruction imposes the duty on the defendant to show that the seller expressly represented to him that the title to, and ownership of, the heifers, was vested in the seller. It is quite uniformly held as a matter of law that, where the animals are present and in actual possession of the seller, as in the instant case, the purchaser may assume that the title and ownership of the animals are with the seller. Second, there is a presumption of innocence —as applied to the purchase of the animals in question, of good faith—extended in favor of the defendant throughout the trial. This instruction, however, cast upon the defendant the burden of establishing the good faith of the purchase. As the burden of proof to establish the commission of a crime necessarily extends to every essential element of the crime, the burden is, of course, with the state to overcome that presumption beyond a reasonable doubt.

A very similar question was before the Circuit Court of Appeals, Eighth Circuit, in the case of *Drossos* v. *U. S.*, 2 F. (2d) 538. An instruction that, if the jury was convinced that the accused's relationship with the woman was innocent, and that he had no intention of having immoral relations with her, he should be acquitted. It was held that the instruction was erroneous and prejudicial in shifting the burden of proof on the accused, and that the error was not cured by an instruction that the accused is presumed to be innocent until he is proved guilty beyond a reasonable doubt, and, in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to an acquittal.

A number of errors are assigned in which the appellant complains that witnesses were required to pass upon the credibility of the testimony of other witnesses. The ap-

pellant gives by way of example a question put to the witness Davis, called in behalf of the defendant: ▮▮ "Q. And if Mr. Timothy said that he and Louis Laris was down in the field looking at that cow at the time the Indian boy drove up to the truck, was Timothy mistaken?" Objection to which was overruled.

It is obvious that questions such as the foregoing are quite improper, and objection thereto should be promptly sustained. It would seem to be wholly unnecessary to say that it is no function of a witness to pass either upon his own credibility or the credibility of other witnesses in the case. This is the exclusive prerogative of the jury. 40 Cyc. 2407.

We find no merit in the other errors assigned.

For the reasons hereinbefore given, the conviction of, and the judgment against, the defendant is hereby reversed, and the case is hereby remanded to the district court of Uintah county, with direction to grant a new trial.

STRAUP, J.

I concur. The proper determination of the question in hand involves a consideration of two provisions of our statute, Comp. Laws Utah 1917, § 8285, set forth in the prevailing opinion defining larceny and relating to possession of stolen property, and section 8992, also set forth in the prevailing opinion, that a conviction shall not be had on the testimony alone of an accomplice. Both statutes have been before this court many times, and have been fully considered and applied. The statute defining larceny was considered by this court in the cases of State v. Potello, 40 Utah 56, 119 P. 1023, 1026; State v. Converse, 40 Utah 72, 119 P. 1030; State v. Bowen, 45 Utah 130, 143 P. 134; State v. Barretta, 47 Utah 479, 155 P. 343, 346; State v. Kinsey, 77 Utah 348, 295 P. 247, 249.

In the Potello Case it is said that, independently of a statute, the authorities are in conflict as to whether mere recent possession of stolen property is even evidence against

the accused; that in most jurisdictions, and by the great weight of authority, the mere fact of possession of property recently stolen is held to be evidence against the possessor, in others, only his "unexplained possession" is held to be evidence against him; that whether such evidence alone is sufficient to sustain a conviction is an entirely different thing; and then *People* v. *Hart,* 10 Utah 204, 37 P. 330 (decided before the present statute defining larceny was passed) is quoted, wherein it was held that:

"It seems to be the established doctrine, especially in this western country, that in larceny the recent possession of stolen property is not of itself sufficient to warrant a conviction."

I see no reason to depart from such holding or to lay down another or different rule. In the Potello Case the present statute was fully considered and construed. It there is expressly held that by reason of the statute—"possession of property recently stolen, when the party in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt"—the state, in the absence of other evidence, to make a prima facie case of guilt, must show the larceny, recent possession of the stolen property in the accused, and that, when called upon to explain or account for his possession, he refused to do so, or failed to make a truthful or reasonable or satisfactory explanation. The same rule is laid down in the Converse Case. In the Barretta Case it is said:

"If only the larceny is shown and recent possession in the accused, that is not sufficient to justify a submission of the case, and does not warrant a conviction."

In the Kinsey Case it is said:

"The state argues that the mere or bare possession of the goggle recently stolen was sufficient to justify the verdict, and that the jury was not required to believe the testimony of the defendants that they had no knowledge of the goggle being in the car. Possession of articles recently stolen, when coupled with circumstances of hiding or concealing them, or of disposing or attempting to dispose of them, or of making false or unreasonable or unsatisfactory explanations of the posses-

sion, may be sufficient to connect the possessor with the commission of the offense. But mere or bare possession when not coupled with other culpatory or incriminating circumstances, does not alone suffice to justify a conviction."

I see no reason to depart from these holdings, and think they should be followed.

Now, as to the statute relating to testimony of an accomplice: That, too, has been before this court many times, and it uniformly has been held that, to convict on the testimony of an accomplice, there must be, in the plain language of the statute, other evidence which in itself and without the aid of the testimony of the accomplice tends to connect the accused with the commission of the offense, and that the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof. Hence, following what frequently has been said by this and by other courts, is there, by excluding the testimony of the accomplice and without the aid of it, other evidence sufficient to connect the defendant with the commission of the offense? Let it be assumed or conceded that the state sufficiently proved the larceny. In making such proof not anything, independently of the testimony of the accomplice, is shown to connect the defendant with the commission of the offense, not anything to show that he was seen at or about the place when and where the larceny was committed, or participated in the taking or driving away of the stolen cattle. Nothing of that kind is claimed by the state. What it proved in such respect is that the accomplice alone stole the cattle, that he, unaided by any one, without the consent of the owner, unlawfully took and drove the cattle away. What the state claims is, not that the defendant participated in the taking or driving away of the cattle, but advised and encouraged the accomplice to do so and to steal them. That, of course, if proven, makes the defendant a principal, if a conspiracy, or what amounted to a conspiracy, was entered into between them to steal the cattle. But what proof there is of that, though vague and uncertain as it is and as pres-

ently will be noted, rests alone upon the testimony of the accomplice. Eliminating it, there is no evidence to show the conspiracy, or any advice or aid or encouragement given by the defendant to steal the cattle, or to do any unlawful act. Thus, the only evidence claimed by the state, other than the testimony of the accomplice, to connect the defendant with the commission of the offense, is the circumstance of recent possession by the defendant of the stolen property. But the numerous decisions of this jurisdiction heretofore referred to show such circumstance, though competent to be put in evidence, nevertheless not sufficient to connect the defendant with the commission of the offense or to warrant or justify a conviction. If such decisions are to be adhered to and followed, nothing is to be gained by wandering away from them in an attempt to seek decisions in other jurisdictions where, independently of a statute or under a statute different from our statute as to the effect of recent possession of stolen property, it may have been held that such mere possession is sufficient to connect the accused with the commission of the offense and to justify a conviction. If, as so frequently held by this court, such circumstance is not sufficient to connect the accused with the commission of the offense, then it follows as night the day that it is not sufficient to corroborate the testimony of the accomplice, for in the language of the statute the corroboration must be by other evidence, which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense.

*State* v. *Butterfield*, 70 Utah 529, 261 P. 804, is cited as an authority to the effect that possession of stolen property is sufficient to corroborate the testimony of an accomplice. On a mere cursory reading of the case it is apparent that what was there said on such subject was mere dicta, and thus is without binding effect. *Callahan* v. *Salt Lake City*, 41 Utah 300, 125 P. 863. While all members of the court concurred in the opinion and in the reversal of the judgment, yet such does not constitute a concurrence in every-

thing stated or discussed in the opinion. Every opinion must be read and considered in the light of the facts and in view of the particular question or questions presented for decision. *Larzelere* v. *Starkweather*, 38 Mich. 96. In opinions, especially in giving reasons, we all at times may more or less be given to dicta of some sort which often may be overlooked, but there is less excuse in thereafter citing the dicta as of binding effect or as an authority on the proposition. When the facts and the question presented for decision in the Butterfield Case are considered, the opinion makes against and not for the state on the subject of the corroboration of an accomplice, and here, in principle, supports the defendant.

16 C. J. 708, and numerous cases are cited in the dissenting opinion to the effect that possession by the defendant of stolen property may be sufficient corroboration of the testimony of an accomplice to warrant a conviction. I have examined the cases cited in support of the text, and the other cases cited in support of such proposition, and find in all of them, except in a few jurisdictions where contrary to our holdings and of other courts it is held that mere possession of stolen property is sufficient to connect the accused with the commission of the offense, that there were present other inculpatory facts or elements, such as where the accused denied possession, or refused to explain or account for his possession, or made untruthful or contradictory material statements with respect thereto, or where the stolen property was hidden, buried, or concealed by him, or where he refused to let the owner look for the property, or sold valuable stolen property for a mere nominal sum, or fled or hid, or attempted to do so, when the owner and officers came to his premises to search for the property, or by testimony of witnesses other than that of the accomplice, the accused was seen in company with the accomplice in going to or from the place or scene of the larceny, or where there was evidence of the defendant's admission of guilt or of some material fact or facts show-

ing culpability, or where the accused was seen watching outside while his accomplices went inside a building and got the property and all surreptitiously fled with the stolen property, or where the accused, in company with the accomplice, was seen driving his own team and wagon with the stolen property loaded thereon from the scene of the larceny, or where there was evidence, independently of the testimony of the accomplice, of some inculpatory fact or facts in addition to the circumstance of possession of the stolen property. In some of the cited cases, the question was not as to sufficiency of the corroboration of the testimony of the accomplice, but as to the charge of the court as to the law applicable to testimony of an accomplice.

Considerable importance is attached to the case of *State* v. *Seitz,* 194 Iowa 1057, 187 N. W. 695. In the first place, it is to be noted that there the Chief Justice and two other justices dissented from the holding of sufficiency of the evidence to corroborate the testimony of accomplices. In the next place, facts and circumstances were there shown of an inculpatory character in addition to the possession by the accused of the stolen property. Indeed, in the prevailing opinion it there is stated that the testimony of the accused himself showed him guilty of receiving stolen property. The subject-matter of the larceny was brass, the property of a railroad company. When agents of the company and peace officers first interviewed the accused, he denied all knowledge of the transaction and of possession of the property, said he did not know anything about it. Later, he admitted to them that, upon prior arrangements made with the accomplices to take the brass at an agreed price, he had advanced moneys to them to get the brass, knew where it was coming from, and admitted he got himself "in bad." Logically, the claim that the mere possession of property recently stolen is sufficient to corroborate the testimony of an accomplice that the possessor is the thief or aided or participated in the theft is unsound, unless, contrary to the numerous holdings of this court, such mere

possession is sufficient to connect the possessor with the commission of the offense. To lay down such a rule would not only be contrary to the prior holdings of this court, but also would convict one on the testimony of an accomplice, no matter how innocently or under what circumstances he acquired or possessed the property, for, as is argued, no matter what explanation the possessor may make of his possession, the jury may disbelieve or disregard it and convict him on the mere fact of his possession and the testimony of the accomplice.

It also is urged that the defendant here did not make a satisfactory, made a false, explanation of his possession. The accused when first interviewed made the claim, and at the trial testified, that he purchased the cattle from the Indian, the accomplice, not knowing they had been stolen, and who, as the Indian testified, had pasture lands and each year nine or ten head of cattle of his own. The defendant, among other things, admittedly was in the business of buying, selling and slaughtering live stock and poultry. He, prior to the transaction, on several occasions, had purchased cattle from the Indian, who admittedly owned them and had the lawful right to sell them. He also had purchased cattle from the owner of the stolen cattle, as well as from others. The pasture lands of the owner of the stolen cattle lie between pasture lands of the Indian on the one side and pasture lands of Johnny White, another Indian, on the other side. The owner, in giving his testimony on behalf of the state, in the forenoon of a day of the trial, and having been examined several times on direct, redirect, cross, and recross examination, was specifically asked as to his conversations with the defendant and to state all that the defendant said or stated, and not anything was testified to by the witness as to the place the defendant said he had loaded the cattle. At the recess or intermission of the noon hour, the witness admittedly talked with counsel for the prosecution with respect to his testimony, and, when the court resumed its session, he was again put on the witness stand,

and, in response to questions propounded to him by the prosecution, he answered that the defendant told him that he had loaded the cattle at the corral of the accomplice, when in fact the state had shown that they were loaded, as they were, at the corral of Johnny White, four or five miles from the corral of the accomplice. When on cross-examination he was asked why he had not testified to that fact in the forenoon, he answered that it was by reason of his conversation with counsel for the prosecution at the noon hour and saw the necessity of presenting the thought that he had asked the defendant where he loaded the cattle, and further answered:

"Well, I presume that I did not ask him where he loaded them. I said that I did not, but I talked with counsel during the noon hour and they emphasized to me the necessity of testifying that I asked him where they were loaded."

Because of such testimony, though denied by the defendant that he told the owner that he had loaded the cattle at the corral of the accomplice, and it being shown that the cattle were loaded at Johnny White's corral and was so testified to by the defendant, it now is urged that the defendant gave a false account of his possession, and made an untruthful and unsatisfactory explanation of it. That, as it seems to me, is looking at the shadow and not to the substance of things. The circumstance of the cattle being at the corral of Johnny White is set forth in the prevailing opinion. On the theory of the state, it is of little moment whether the cattle were loaded at the one place or at the other. That they were loaded at the one place is no more or less inculpatory than if they had been loaded at the other, and the one no more than the other tends to corroborate the testimony of the accomplice that the defendant had advised or encouraged him to steal them. If what the owner under the stated circumstances testified to is a contradiction at all, it is one of wholly an immaterial matter. Indisputably the cattle were loaded in broad daylight and in the presence of others and in plain view hauled along the

public highway, and in plain view put in the corral of the defendant along the highway. There was not anything clandestine or surreptitious about it or concerning any act or conduct of the defendant in respect of any part of the transaction. His explanation that he purchased the cattle from the Indian and the circumstances thereof were corroborated by the testimony of a number of witnesses, and by the sheriff of the county who testified that the Indian stated to him that the Indian told the defendant that the cattle belonged to the Indian and that he sold them to the defendant. The explanation which the defendant gave was, under the circumstances, both reasonable and probable, and was undisputed. Not anything is shown to cast doubt or improbability upon it.

Further, since the state made no claim that the defendant participated or aided in the taking or driving away of the cattle, and claimed and proved that was done alone by the accomplice unaided by any one, and was so testified to by the accomplice himself, but claimed that the defendant was connected with the commission of the offense by advising and encouraging the accomplice to commit the offense, the corroboration required was as to the testimony of the accomplice that the defendant had so advised or encouraged him, of which there is no corroborating evidence whatever. That the defendant had so advised or encouraged him rests alone upon vague and uncertain testimony of the accomplice. His testimony was given through an interpreter. There was difficulty in getting him to understand the questions propounded to him and still more difficulty in getting him to answer them, so much so that the trial court at the time remarked about it. Naturally, some of his answers were irresponsive and some contradictory. As to the claim made by the state that the defendant advised and encouraged the accomplice to steal the cattle, the accomplice testified that the defendant "asked me to go and get some cattle for him, or if I knew where there was some cattle he could get and that if I did I could deliver them to a certain place there in

the corral." Then he testified: "Nothing was said where he (the defendant) was to receive the cattle." Again he testified that the defendant told him "to go and look up some cattle for us to get. He said I will pay you for your services for getting them." Again he testified that the defendant asked him if he had any cattle, and the accomplice told him that he had not, that he had sold them all he had, and then the defendant told him to go near White Rock Springs and "see if you can find me some cattle—nice, fat cattle, that I can buy." Again he testified that the defendant told him to get "these cattle out of the pasture and take them home to the place I delivered them to." At one place in his testimony he testified the defendant told him to "rustle cattle," and then later testified he did not understand the meaning of words—"I understand sometimes, I don't understand very well," that he could not understand what the defendant's counsel meant, and did not know what the word "rustle" meant, and that the defendant "did not say that," nor did the defendant tell him "to steal" cattle, or "acquire" cattle, and that he did not remember what words the defendant used, "but it meant the same thing as going and getting them." Not anything was testified to by him as to the identity of any cattle or as to the place or circumstances under which he was to get them. Again he testified: "When I took these three cattle out of the pasture and drove them down to Johnny White's I didn't know whether they were the defendant's cattle or not. I did not know that they were not my cattle." He further testified, and it is not disputed, that if he, who admittedly and confessedly was the thief, would testify against the defendant, he would be protected and granted immunity.

It is that kind of vague and uncertain testimony of the accomplice upon which the state relies and is required to rely to show that the defendant advised and encouraged the accomplice to steal the cattle. Because of its vagueness, I think it has no such tendency. If, however, vague and uncertain as it is, it be regarded as having such tendency,

yet, when the record is looked to for that necessary corroboration required by the statute, I think the evidence wholly wanting.

Lastly, it in effect is urged that, no matter what explanation the defendant made of his possession, and though it was consistent with innocence, nevertheless the question of the sufficiency of the explanation, or of its truthfulness or credibility, was for the jury. I think we had better abide by what this court has heretofore said on the subject in the Converse Case, and not now attempt to lay down some other rule. In considering the subject, this court there said:

"That does not mean that the question of whether the explanation was or was not reasonable or satisfactory is always for the jury. They cannot be permitted to say that an explanation which is apparently reasonable or probable or truthful is unreasonable or improbable or untruthful, in the absence of evidence or circumstances to justify such a conclusion. They may not in a criminal case, any more than in a civil case, arbitrarily or capriciously disregard or reject evidence or refuse to consider it. *People* v. *Mock Yik Gar*, 14 Cal. App. 334, 111 P. 1039. If the evidence with respect to the explanation is uncertain, or is in conflict, or is open to different conclusions, or is in itself improbable or doubtful, or, as is often said, if reasonable minds may differ with respect to the conclusion or inference to be drawn from it, the question is one for the jury. If, on the other hand, the evidence with respect to it is consistent with innocense, is in itself reasonable and probable, and bears no mark of suspicion or fabrication, and is not contradicted by evidence other than the mere presumption referred to [arising from the possession of stolen propery], then the jury may not disregard such evidence and determine the fact upon the mere presumption."

That, I think, is the situation here, and what is pointed to as affecting the credibility or probability of the explanation has no substance.

I therefore concur in the reversal of the judgment and in remanding the case for a new trial.

ELIAS HANSEN, J.

I concur in the views expressed by Mr. Justice HANSON and Mr. Justice STRAUP. The state makes no claim that

the defendant participated in the actual stealing of the two heifers in question. The claim is made on behalf of the state that the defendant is guilty because he advised or encouraged the Indian Greenstick to steal the cattle. Recent possession of stolen property without a satisfactory explanation of how possession was secured may justify a jury in concluding that the person in possession participated in the actual stealing, but I cannot see how it can be said that the mere possession of stolen property tends to show that the person in possession of such property advised or encouraged the thief to steal the same. It is not at all uncommon for honest persons to purchase property from a thief. I therefore can see no escape from the conclusion that the conviction of the defendant in this case rests solely upon the evidence of the Indian, Greenstick, who admittedly was an accomplice. Under such circumstances, the judgment must be reversed.

FOLLAND, J.

I dissent. I think there was sufficient in corroboration of the accomplice, the Indian, Greenstick, to take the case to the jury. The evidence is fully and fairly stated in the prevailing opinion, with the exception that in referring to the conversation on August 4, 1929, at Mr. Timothy's place near the "Gyp" plant, it is stated that whatever was done or said on that occasion was in the presence and hearing of Mr. Timothy and Mr. Davis, both of whom were witnesses. These witnesses so testified, but the Indian testified that the defendant and he withdrew from the others and had some conversation in low voice outside the hearing of the others.

The defendant is charged with the larceny of two heifers, and, while charged as a principal, it is on the theory that, although not present and participating personally in the taking of the heifers, he had previously advised and encouraged Greenstick to commit the theft. This, if proven, makes defendant a principal in the crime. Comp. Laws

Utah 1917, § 7919. Greenstick testified that at the request and insistence of the defendant he took the cattle from the pasture of the owner and drove them to the corral of Johnny White, another Indian, and, after telling the defendant what he had done, the defendant met him at Johnny White's corral, and there the two heifers, branded with the owner's brand, were loaded by Greenstick and the defendant on to defendant's truck, and were taken by the defendant to his corral in Roosevelt, where they were shortly thereafter seen and claimed by the owner. The defendant explained his possession by saying to the owner that he had bought the cattle from Greenstick, and, according to the testimony of the owner, that he had loaded them at Greenstick's place near Jimmy Nephi's and volunteered the information that there was another cow, the mother of one of the heifers, at the same place. Greenstick's place is about five miles distant from the Johnny White place.

The statement of defendant, if Killian be believed, and that is a question for the jury, that he had loaded the cattle at "Edgar's place near Jimmy Nephi's," instead of saying that he had loaded them at Johnny White's place, where he did load them, was false. The inference to be drawn from it is that he falsified in order to make his story sound more probable.

The complicity of the defendant consisted in advising, encouraging, and inducing Greenstick to steal the animals and to deliver them to him at the corral of Johnny White. Greenstick, admittedly an accomplice, is the only person who testified to the conversations wherein defendant so advised him to steal the cattle. That the cattle were loaded at Johnny White's corral by Greenstick and defendant, and were found later in possession of defendant at his corral, together with his explanation of his possession and that he made small payments to Greenstick, depends upon testimony of other witnesses. The question is whether by this other testimony the accomplice is sufficiently corroborated under our statute, Comp. Laws Utah 1917, § 8992, which requires, before conviction can be had on the testimony of

an accomplice, that it be "corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." If it is necessary that Greenstick be corroborated directly with respect to the particular conversations wherein the defendant is claimed to have advised and encouraged him to steal the cattle, then there is no sufficient corroboration, but, if defendant's possession of the heifers, his explanation which was partly true and partly false, and his loading of the cattle at Johnny White's place, aided by Greenstick, and payment of money to the accomplice both before and after he saw the cattle, tend to connect him with the commission of the offense, then the accomplice is sufficiently corroborated to make a case for the jury.

The statute respecting corroboration of accomplices is reasonably clear itself, and has been construed and applied by this court and by other courts. An accomplice need not be corroborated as to every material fact to which he testifies; such a requirement would in effect deny to his testimony any value at all. If he is corroborated as to some material facts, the jury is entitled to infer that he has been truthful as to others. 16 C. J. 705; *People* v. *Viets,* 79 Cal. App. 576, 250 P. 588; *State* v. *Hall,* 97 Iowa 400, 66 N. W. 725.

In *State* v. *Lay,* 38 Utah 143, 110 P. 986, 987, this court said:

"Under this statute, the jury has no legal right to convict a defendant upon the uncorroborated testimony of an accomplice, even though they believe the testimony of the accomplice to be true as to every material fact, and are convinced by it of the guilt of the defendant beyond a reasonable doubt. *People* v. *Clough,* 73 Cal. 348, 15 P. 5; *State* v. *Carr,* 28 Or. 389, 42 P. 215; Underhill, Crim. Ev. p. 93. It is not essential, however, that the corroborative evidence shall be sufficient of itself to support a verdict of guilty; nor is it essential that the testimony of the accomplice be corroborated on every material point. It is sufficient if the testimony of the accomplice is corroborated as to some material fact, and that the corroborative evidence in and of itself, and 'without the aid of the testimony of the ac-

complice, tends to connect the defendant with the commission of the offense.' "

. The evidence here is more than merely the finding of recently stolen cattle in defendant's possession. Yet possession alone of property recently stolen is a material fact which may be proven (36 C. J. 895), as it tends to connect a defendant with the transaction of the commission of the crime, and is sufficient to corroborate an accomplice. The rule is stated in 16 C. J. 708 as follows:

"The possession by defendant of the fruits · of the crime, such as property stolen at the time of the burglary, robbery, larceny, or murder, of itself tends to connect him with the commission of the crime, and may be sufficient corroboration of the testimony of an accomplice to warrant a conviction, and this has been held to be true in a homicide case, although the accomplice testified only to the fact of the killing and not as to the taking of the property of the victim.

"In a prosecution for receiving stolen goods the actual possession of the goods has been held to corroborate the testimony of an accomplice as to felonious intent and guilty knowledge in receiving the goods, and a fortiori possession connected with concealment of the goods is sufficient corroboration."

In *State* v. *Butterfield,* 70 Utah 529, 261 P. 804, 805, the decision turned on whether the defendant was in personal possession of the stolen property found in a house occupied jointly by him and the accomplice. The holding was that the evidence did not show a conscious personal possession, but the ocurt said:

"If the corroboration amounted to proof that the defendant at the time referred to had possession of the parts of the stolen property, it would have satisfied the requirements of the statute, as recent and unexplained possession of stolen goods is substantial evidence of guilt."

In the Butterfield Case no attempt was made by defendant to explain possession of the property, while here the defendant did make an explanation, which, tested by the independent testimony, was partly false, and, if the accomplice is to be believed, was wholly false. Possession of stolen property tends to connect the defendant with the crime,

and it is for the jury to say whether the explanation is satisfactory or not. *People* v. *Haughey,* 79 Cal. App. 541, 250 P. 406.

A case very much in point is *State* v. *Seitz,* 194 Iowa 1057, 187 N. W. 695, 699. Seitz, a junk dealer, was charged jointly with others with the larceny of a quantity of brass which the other defendants had stolen from certain railroad shops. The accomplices had sold Seitz some stolen brass and told him they could get more from the same place. His complicity in the crime rested on the evidence of the accomplices that he told them "to get it down there to him," and he would pay them 10 cents a pound for it. The accomplices, without Seitz, went to the railroad yards and took and carried away about 1,100 pounds of brass, some of which they delivered to Seitz at his place of business, and some was shipped to him by express. Iowa has a statute on corroboration of accomplices substantially the same as our section 8992. The court said:

"We have held, however, that the corroboration need not be as to every material fact testified to by an accomplice. The requirements of the statute are met if the accomplice is corroborated in some material fact tending to connect the defendant on trial with the commission of the offense. * * *

"Logically from an examination of the record to discover whether it affords sufficient corroboration of the testimony of H. H. Ryland, Charles Seward and Hollis Printy we meet the proven and admitted fact that the defendant Seitz was in possession of the recently stolen property. The presumption that arises from the possession of recently stolen property is one of fact. The jury was not instructed on the presumption arising from possession of recently stolen property, unexplained, yet the circumstances under which the brass was bought by Seitz and sold to him by the accomplices were of probative value to be considered by the jury as tending to connect the defendant with the commission of the crime alleged. *State* v. *King,* 122 Iowa 1, 96 N. W. 712; *State* v. *Stutches,* 163 Iowa 4, 144 N. W. 597. * * *

"We are not cited to any case, and we know of no authority, where a court assumed to say that the explanation given by the accused was sufficient, as a matter of law. We think it is universally held that the effect of explanatory testimony and the extent to which it rebuts the inference of guilt arising from recent possession of stolen property is for the jury. It may be conceded that when the accused gives a

reasonable explanation of his possession of stolen property, it becomes incumbent upon the state to show the falsity of the account. But it remains for the jury to say, taking into consideration all of the testimony bearing thereon, whether the explanation offered is reasonable and credible, and if the explanation is by the jury rejected as intrinsically unworthy of belief, the absence of any counter showing by the state does not necessarily require a verdict of acquittal. * * *

"It is insisted in argument by appellant's counsel that, because some of the circumstances shown are as consistent with innocence as with guilt, therefore they cannot be given force as supplying the required statutory corroboration. We do not understand this to be the test. *State* v. *Bosch,* 172 Iowa 93, 153 N. W. 73."

The view that the evidence is sufficient to corroborate the accomplice is supported also by the following cases: *People* v. *Hovis,* 30 Cal. App. 703, 159 P. 222; *Williams* v. *State,* 104 Tex. Cr. R. 55, 282 S. W. 228; *Taylor* v. *State,* 35 Ariz. 317, 277 P. 978; *People* v. *Wagner,* 36 Cal. App. 41, 171 P. 699; *People* v. *Grundell,* 75 Cal. App. 301, 17 P. 214; *Snoddy* v. *State,* 75 Ala. 23; *Estes* v. *State,* 180 Ark. 656, 22 S. W. (2d) 172; *Jones* v. *State,* 105 Tex. Cr. R. 574, 289 S. W. 684, 685; *State* v. *Ozias,* 136 Iowa 175, 113 N. W. 761; *Hunter* v. *State,* 23 Okl. Cr. R. 125, 212 P. 1014; *People* v. *Armstrong,* 114 Cal. 570, 46 P. 611; *Modica* v. *State,* 94 Tex. Cr. R. 403, 251 S. W. 1049; *Lopez* v. *State,* 92 Tex. Cr. R. 97, 242 S. W. 212; *Frazier* v. *Com.,* 190 Ky. 196, 226 S. W. 1069; *State* v. *Thompson,* 87 Iowa, 670 54 N. W. 1077; *State* v. *Russell,* 90 Iowa 493, 58 N. W. 890.

In addition to possession by defendant of recently stolen property, the accomplice is directly corroborated as to his testimony that he and defendant loaded the cattle at Johnny White's place. The cattle bore the brands of the owner, which could be plainly seen. This should have put defendant on inquiry if honestly buying the heifers. As it was, there is testimony that he had previously bought all of Greenstick's cattle, and had at times purchased from Killian, so it may be inferred that he was familiar with his brands. It is undisputed that defendant paid Greenstick $4 on one occasion and $4 and credit for an auto tire on

another, both before the day he loaded the cattle. This testimony to my mind is more in accord with the theory that he was paying for services, as testified by Greenstick, than that he was paying in advance installments on the purchase price of cattle he had never seen but might buy in the future from the Indian, as claimed by defendant. It is said that the circumstance of Johnny White seeing defendant and Greenstick load the two heifers in the truck and defendant drive away with them has no tendency to connect defendant with the crime. I think it does have a direct tendency to connect the defendant with the crime. *Modica* v. *State,* supra. It is for the jury to determine whether the explanation made by defendant is satisfactory or sufficient. Under our statute, Comp. Laws Utah 1917, § 8285, the jury might convict on this testimony if the explanation of defendant were unsatisfactory. Suppose we apply the test quoted in the prevailing opinion from *Welden* v. *State,* 10 Tex. App. 400, and eliminate from the case the evidence of the accomplice with a view to ascertain if there is any inculpatory evidence—evidence tending to connect the defendant with the crime. If there is, the accomplice is corroborated. If we do this, the case stands thus: There is a larceny of the two heifers belonging to Killian and marked with his brands. Shortly thereafter defendant and Greenstick are seen loading these heifers into defendant's truck at Johnny White's corral. The cattle are shortly thereafter found in possession of defendant in his corral at Roosevelt. In explaining his possession, he says he bought them from an Indian and loaded the cattle at Greenstick's place. This, I think, would make a prima facie case under the statute. The defendant is connected with the offense; hence the accomplice is corroborated.

*People* v. *Morton,* 139 Cal. 719, 73 P. 609, and *State* v. *Cowell,* 149 Iowa 460, 128 P. 836, are cited in the prevailing opinion, but neither are in point because there was no evidence of possession in the accused of any of the property taken in the commission of the charged offense, nor was

there any evidence whatever, other than the testimony of the accomplice, to connect the accused with the crime.

It is said that *State* v. *Potello,* 40 Utah 56, 119 P. 1023 is conclusive against the state on the argument I have just made. That would be true if here, as there, the proof was that the asportation of the heifers had been accomplished without the defendant having advised and encouraged the theft. The testimony of the accomplice proves that the asportation was by him, but it also proves, if believed, that it was done at the instance of the defendant. In *State* v. *Potello* the evidence merely showed that others than the defendant had committed the theft, and the court rightly held that the presumption of guilt arising from proof of recent possession of the stolen property was, by that evidence, overcome, and hence inoperative to support conviction. There was no evidence whatever in that case that the theft was committed by others at the solicitation of the accused.

Error is assigned in the giving of instruction No. 7, which is as follows:

"You are instructed, Gentlemen of the jury that if you shall find from the evidence that the witness Greenstick represented to the defendant that the heifers described in the information belonged to him Greenstick, and offered to sell the said heifers to the defendant, and the defendant agreed to purchase said heifers and receive the same in good faith, believing them to be the property of Greenstick, then I charge you that the verdict must be 'not guilty.' "

The only ground of objection stated in the exception to the instruction was "for the reason that the same tends to cast a burden upon the defendant of proving his innocence of the crime charged." This also is the only ground for objection stated in the assignment of errors.

Instruction No. 7 is substantially in form and substance defendant's requested instruction No. 4, but with some additional language respecting the representations as to the ownership of the cattle. Defendant's request No. 4 is as follows:

"You are instructed that if you shall believe that the defendant Laris agreed to purchase the cattle mentioned in the information of the witness Greenstick and that such agreement was made in good faith on the part of such defendant, that you must render a verdict of not guilty."

No exception was taken or assignment of error made with respect to the matter added by the court, but, notwithstanding that, objections directed to this new matter are made and argued in the brief of appellant and noticed in the prevailing opinion. Even though the instruction be open to the objection stated in the exception, which I doubt, the defendant is in no position to take advantage of it, as the same vice inheres in his requested instruction No. 4, and the error, if any, was induced by his own request. 14 R. C. L. 815.

In my opinion, the judgment should be affirmed.

CHERRY, C. J.

I concur in the views expressed by Mr. Justice FOLLAND in his dissenting opinion.